**In re OPELIKA MANUFACTURING CORPORATION, and Sew Simple Systems, Inc., Debtors and Debtors-in-Possession.**

**Bankruptcy Nos. 85 B 6582, 85 B 6583.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

May 9, 1986.

F. John McGinnis, Benjamin D. Schwartz, Altheimer & Gray, Chicago, Ill., for debtors.

David S. Heller, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, Ill., for First Nat. Bank of Chicago as Trustee.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Chief Judge.

This matter came to be heard on the motion of the debtor in possession, Opelika Manufacturing Corporation ("Opelika" or "debtor"), to extend the time within which it must assume or reject various non-residential real property leases. In connection therewith, Opelika presently seeks a determination as a matter of law that its Lease Agreement (the "Agreement") with the Pulaski County-Hawkinsville Development Authority (the "Authority"), is in fact no more than a security agreement. For the reasons set forth below, the court, having reviewed the memoranda and documents submitted by the parties, holds that the Agreement in question, although denominated a lease, is, in actuality, a security agreement.

## BACKGROUND

On May 1, 1971, Opelika entered into an agreement with the Authority whereby the Authority would purchase and construct a plant in Hawkinsville, Georgia, as well as acquire and install machinery and equipment for use by Opelika, using proceeds from the sale of tax exempt revenue bonds issued by the Authority. Under a Trust Indenture executed on that same date, the Authority assigned its interest in the Agreement to the First National Bank of Chicago, as Trustee (hereinafter the "Trustee").

The debtor now argues that the terms of the Agreement bear no resemblance to a true lessor-lessee relationship but rather demonstrate that Opelika borrowed money which it was obligated to repay with interest, securing its obligation with a deed to the plant and certain equipment. The Trustee, on the other hand, appearing in these proceedings, seeks a determination that the Agreement is a lease to be assumed or rejected by the debtor. The Trustee, in addition to contending that there is no evidence that the parties intended to create a security agreement, posits that there are sufficient indications in the Agreement of a leasehold estate under Georgia law.

## DISCUSSION

Section 101(42) of the Bankruptcy Code defines a security agreement for pur-

poses of bankruptcy law as an "agreement that creates or provides for a security interest." 11 U.S.C. § 101(42). Whether a lease constitutes a security interest under the Code depends on whether it constitutes a security interest under applicable state law, H.Rep. No. 95–595, 95th Cong., 1st Sess. 314 (1977) *reprinted in* U.S.Code Cong. & Admin.News, 5787, 5878, 6271 (1978). The Agreement in question, which encompasses both real and personal property, provides that it is to be governed by Georgia law. Section 1–201(37) of the Georgia Commercial Code, like its Uniform Commercial Code counterpart, provides in relevant part as follows:

> Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration *does* make the lease one intended for security.

Ga.Code § 109A–1–201(37) (emphasis added).

■ In determining whether or not a transaction is intended to be a true lease, courts look beyond the form of the transaction to its economic reality. *In re Nite Lite Inns,* 13 B.R. 900, 908 (Bankr.S.D.Ca. 1981). *See also Matter of Kassuba,* 562 F.2d 511, 513 (7th Cir.1977); *Fox v. Peck Iron and Metal Co., Inc.,* 25 B.R. 674, 688 (Bankr.S.D.Ca.1982). The court in *In re Central Foundry Company,* 48 B.R. 895 (Bankr.N.D.Ala.1985), a case factually similar to the present situation, was required to determine whether a "lease" was a true lease or a disguised security agreement. The "lease" term in *Central Foundry* was tied to the maturity and retirement of the bond issue. In addition, the "rent" was payable when the interest payments on the

bond came due; the "rent" payment also included a payment on outstanding principal of the bond issue; the "lessee" had an unconditional obligation to pay "rent"; and the "lessee" was obligated to purchase a certain pollution control system at the end of the "lease" term for a nominal consideration of $10.00. The court there held that the terms of the "lease" clearly showed the land and equipment were being used to secure the indebtedness on the bond issue through which the construction was financed.

■ With respect to the Agreement in issue, Opelika is obligated under section 12.1 to purchase the Project[1] for $10.00 at the expiration or sooner termination of the "lease term" following full payment of the bonds. Clearly such a provision does make the present "lease" one intended as security under section 1–201(37) of the Georgia Commercial Code. *See also In re Seatrain Lines,* 20 B.R. 577 (Bankr.S.D.N.Y.1982) (fact that amount of purchase option was unrelated to market value of property was strong evidence that transaction was one intended for security). Moreover, the Agreement contains additional indicia of a financing agreement as enunciated in *Central Foundry* and other relevant authority,[2] e.g., Opelika may terminate its "lease" by redeeming the bonds (section 11.1); the payment of "rent" is unconditional as long as any bonds remain due (section 5.5); and the "rent" bears no relationship to the value of the right to use the property but is directly tied to repayment of the bonds (section 5.3).

Other provisions of the Agreement demonstrate that the Authority did not retain the normal risks and responsibilities of lessor status. For example, if the project could not be constructed and equipped with funds from the bond sale, Opelika was *required* to complete construction and equip the plant at its own expense (section 4.6); Opelika at its sole discretion can make mod-

---

1. The "Project" is defined in the Agreement as "the Leased Land, the Building and the Leased Equipment, as they may at any time exist."

2. *See, e.g., In re Nite Lite Inns,* 13 B.R. 900 (Bankr.S.D.Cal.1981); *In re Pledger Roy Wood,* 7 B.R. 543 (Bankr.N.D.Ga.1980).

ifications or improvements to the plant (section 6.1(b)); the Authority has no obligation to renew, repair or replace any obsolete or unnecessary "leased" equipment in the plant and Opelika at its sole discretion may sell, trade in, exchange or scrap any such equipment (section 6.2); Opelika may grant or release easements, licenses or rights of way over the property (section 8.4); and Opelika may assign the Agreement without the Authority's consent but the Authority may not sell, assign, transfer or convey the project (sections 9.1 and 9.3).

Despite the foregoing, the Trustee nonetheless contends the Agreement is a true lease, relying primarily on the decision of the Supreme Court of Georgia in *DeKalb County Board of Tax Assessors v. W.C. Harris & Co.*, 248 Ga. 277, 282 S.E.2d 880 (1981) wherein long-term leases with the city development authority were held to be taxable as leasehold estates rather than fee simple estates. Since *DeKalb County* is also a factually similar case, the Trustee focuses on provisions of the subject Agreement similar to those on which the court in *DeKalb* relied in finding sufficient indications of a leasehold under Georgia law, e.g., the Agreement limits expenditures which Opelika can make on the property (section 8.7); the Agreement requires Opelika to remain primarily liable if the property is sublet (section 9.1(a)); the Authority agrees not to convey or sell the property during the lease term (section 9.3); and, in the event of default by Opelika, the Authority may terminate the lease and exclude the lessee from possession (section 10.2(c)).

It is important to note that the decision in *DeKalb* focused on those aspects of a lease inconsistent with fee ownership in the context of a tax case, a significant difference. Nevertheless, even were this court to find those terms of the Agreement on which the Trustee relies similar to the dispositive terms of the leasehold in *DeKalb*, the terms taken as a whole in the context of the weight of authority point persuasively to the conclusion that the parties herein intended to create a security interest rather than a true lease. *See In re Pacific Ex-*

*press, Inc.*, 780 F.2d 1482 (9th Cir.1986). Therefore, insofar as this "lease" is really a disguised security agreement, assumption or rejection under section 365 is inapplicable. *Id.*

SO ORDERED.