In re William TERRELL and Tammy Terrell, Debtors.

William TERRELL and Tammy Terrell, Plaintiffs–Appellees,

v.

Eugene ALBAUGH, Defendant–Appellant,

United States of America, Intervenor.

No. 89–1011.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 8, 1989.

Decided Dec. 21, 1989.

Ralph I. Selby (argued), Bay City, Mich., for debtors/plaintiffs-appellees.

James L. Witzel, Peter S. Shek (argued), Steven T. Flood, Saginaw, Mich., for defendant-appellant.

L. Michael Wicks, Asst. U.S. Atty., Detroit, Mich., J. Christopher Kohn, Torrence R. Thomas, Jr., Bea L. Witzleben, Office of the Dept. of Justice, Civ. Div., Washington, D.C., for intervenor.

Before KENNEDY and RYAN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Eugene Albaugh appeals the District Court's approval of an amended Chapter 12 bankruptcy plan for William and Tammy Terrell. 93 B.R. 115. The plan proposed to reduce the outstanding amount owed to Albaugh on a land contract from its contract value to the property's current market value. Albaugh claims that the Bankruptcy Court erred in treating a land contract interest as a lien subject to 11 U.S.C. § 1225(a)(5)'s cramdown provision. Alternatively, Albaugh argues that 11 U.S.C. § 1225(a)(5) violates the fifth amendment's due process clause. Concluding that the land contract is an executory contract within the meaning of the Bankruptcy Act not subject to the cramdown provision, we REVERSE. Because we find that the contract is executory, we do not reach the fifth amendment question.

## I.

William and Tammy Terrell filed for Chapter 12 bankruptcy in 1987. Five years earlier, Eugene and Isabel May Albaugh entered into a land contract to sell the Terrells several tracts of farm land for $252,000—$226,800 of which was to be paid in installments.[1] At the time of the bankruptcy filing, the land contract had an outstanding balance of approximately $214,780. The Bankruptcy Court took expert testimony and found that the land had decreased in value and was only worth $160,000. The court therefore approved an amended plan reducing the balance to be paid on the contract to this amount and ordering the installment payments reduced accordingly. The balance of the amount owed on the contract was considered unsecured debt for which Albaugh was to re-

---

1. The Terrells were obligated to pay $5,000 per year principal plus interest on the balance at 11%. Under the contract Isabel May Albaugh retained a life lease in a home on the property. Her right to occupy would expire if Albaugh left the home for more than six consecutive months.

ceive $2,749.70. On appeal the District Court affirmed, holding that under Michigan law land sale contracts were not executory and that application of the Bankruptcy Code's cramdown provision did not violate due process.

## II.

Albaugh argues that the land sale contract is executory within the meaning of 11 U.S.C. § 365. Section 365 provides that a trustee can elect to either assume or reject any executory contract, subject to the court's approval. If the trustee assumes the contract, he or she must perform the contract according to its terms, cure any defaults, and provide adequate assurance of future performance. The Terrells argue that the land sale contract is not executory, but merely creates a security interest analogous to a mortgage. As such, they argue, the Bankruptcy Court properly treated the land sale contract as a lien subject to the cramdown provisions of 11 U.S.C. § 1225.

■ The Bankruptcy Code does not explicitly define the term "executory contract." The legislative history, however, indicates that Congress intended the term to be defined as a contract "on which performance remains due to some extent on both sides." S.Rep. No. 95–989, 95th Cong., 2d Sess. 58, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5844; H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 347, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6303. *See also In re Jolly,* 574 F.2d 349, 350–51 (6th Cir.), *cert. denied,* 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978).[2] Congress contemplated that at least some land sale contracts should be classified as executory contracts. Under 11 U.S.C. § 365(i) and (j), the trustee's power to assume or reject executory contracts for the sale of real property is limited.[3]

■ The parties have spent a considerable amount of time discussing the extent to which state law governs the definition of executory contracts. We believe the Ninth Circuit has formulated a useful and workable answer to this question, holding that federal law defines the term executory contract but that

the question of the legal consequences of one party's failure to perform its remaining obligations under a contract is an issue of state contract law. While the principles of contract law do not differ

**2.** Congress apparently had in mind the definition of executory contracts set forth in Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973). Professor Countryman defined an executory contract for the purposes of the Bankruptcy Code as "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *Id.* at 460. *See Shaw v. Dawson,* 48 B.R. 857, 859 (D.N.M.1985); *In re Booth,* 19 B.R. 53, 54 n. 2 (Bankr.D.Utah 1982). The Ninth Circuit has adopted Countryman's definition. *In re Select–A–Seat Corp.,* 625 F.2d 290, 292 (9th Cir.1980) (per curiam) (quoting *Jenson v. Continental Fin. Corp.,* 591 F.2d 477, 481 (8th Cir. 1979)).

**3.** 11 U.S.C. §§ 365(i) and (j) (1982, Supp. III 1985) provide in relevant part:

(i)(1) If the trustee rejects an executory contract of the debtor for the sale of real property ... under which the purchaser is in possession, such purchaser may treat such contract as terminated, or, in the alternative, may remain in possession of such real property....

(2) If such purchaser remains in possession—

(A) such purchaser shall continue to make all payments due under such contract, but may, offset against such payments any damages occurring after the date of the rejection of such contract caused by the nonperformance of any obligation of the debtor after such date, but such purchaser does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset; and

(B) the trustee shall deliver title to such purchaser in accordance with the provisions of such contract, but is relieved of all other obligations to perform under such contract. (j) A purchaser that treats an executory contract as terminated under subsection (i) of this section, or a party whose executory contract to purchase real property from the debtor is rejected and under which such party is not in possession, has a lien on the interest of the debtor in such property for the recovery of any portion of the purchase price that such purchaser or party has paid.

greatly from one jurisdiction to another, to the extent that they do, a bankruptcy court should determine whether one of the parties' failure to perform its remaining obligations would give rise to a "material breach" excusing performance by other party under the contract law applicable to the contract....

*In re Cochise College Park, Inc.*, 703 F.2d 1339, 1348 n. 4 (9th Cir.1983). *See also In re Streets and Beard Farm Partnership*, 882 F.2d 233, 235 (7th Cir.1989) (holding that federal law determines definition of the executory contracts but that state law determines whether a material breach of the contract could occur).

■ Clearly there are material obligations left to be performed by both parties to this contract. The Terrells are obligated to make installment payments for several more years. While Albaugh has given the Terrells occupancy of the land, he has not surrendered legal title.[4] Under Michigan law, the failure of either party to perform his remaining obligations would give rise to a material breach allowing the other party to avoid continued performance. The failure of a vendee to continue paying installments gives the vendor a number of remedies for breach, including forfeiture and foreclosure. Mich.Comp. Laws Ann. §§ 600.5701–5759 and 600.3101–3180. *See also Gruskin v. Fisher*, 405 Mich. 51, 63 n. 6, 273 N.W.2d 893 (1979); *Niman v. Story & Clark Piano Co.*, 213 Mich. 397, 181 N.W. 1017 (1921); *Bishop v. Brown*, 118 Mich.App. 819, 325 N.W.2d 594 (1982). Likewise, if a vendor fails to transfer title when promised or impairs his or her ability to deliver title in the future, he or she has committed a material breach entitling the vendee to sue for specific performance or to cease performance and sue for recision. *See, e.g., In re Reason's Es-*

*tate*, 276 Mich. 376, 267 N.W. 863 (1936) (vendor's sale of land to third party impaired his ability to deliver title giving vendee the right to cease performance and rescind the contract); *Haight v. Salter*, 260 Mich. 6, 244 N.W. 209 (1932) (vendor's failure to deliver title after full payment allows a vendee to rescind the contract).

The Terrells argue that we should accept the position adopted by many of the bankruptcy courts of this Circuit. The most comprehensive of these decisions is *In re Britton*, 43 B.R. 605 (Bankr.E.D.Mich. 1984), a case we overrule by our holding today. The *Britton* court, facing substantially similar facts, determined that land sale contracts are not executory in Michigan, at least where it is the vendee who has filed for bankruptcy. The court emphasized the similarities between land sale contracts and mortgages, citing cases such as *Barker v. Klingler*, 302 Mich. 282, 4 N.W.2d 596 (1942), for the proposition that a vendor holds legal title to the land only as security for the payment of the purchase price.[5] The Terrells additionally refer to *Rothenberg v. Follman*, 19 Mich. App. 383, 387 n. 4, 172 N.W.2d 845 (1969), where the Michigan Court of Appeals stated, "[t]here is, of course, no functional difference between a purchase money mortgage and a land contract. Both secure payment of unpaid purchase money; until it is fully paid the purchaser's rights are encumbered by a lien in favor of the unpaid seller." The court in that case, however, was discussing how long a vendee would be given to redeem his forfeited interest in the land contract. The court did not focus on the nature of the unperformed obligations of the two parties or the legal effect of the failure to perform.[6]

---

**4.** It is unclear whether Isabel May Albaugh has surrendered her interest in the house.

**5.** The *Britton* court did not discuss the relevance of Congress' definition of executory contracts. It is precisely because the vendor has not completed performance, unlike most mortgagees, that the contract is executory.

**6.** The Seventh Circuit appears to have adopted this position in *Streets and Beard*, 882 F.2d 233.

The court noted that "the only remaining obligation on the part of the vendor is to deliver legal title upon the completion of the payments. In our view, the delivery of a legal title is a mere formality and does not represent the kind of significant legal obligation that would render the contract executory." *Id.* at 235. While we cannot pass judgment on the legal significance under Illinois law of a vendor's failure to deliver title, it is clear that under Michigan law such

The Terrells and the court in *Britton* misunderstand the significance of the statements in these Michigan cases. As this Court explained in *National Bank of Kentucky v. Louisville Trust Co.*, 67 F.2d 97, 100 (6th Cir.1933) (citation omitted in original), *cert. denied*, 291 U.S. 665, 54 S.Ct. 440, 78 L.Ed. 1056 (1934), statements concerning the equitable or legal nature of a vendee's or vendor's interest "are only incidents of or necessary consequences of the right to specific performance, and in seeking to give a simple and easily understood reason for them, courts have frequently said that the vendor 'holds the legal title to the real estate in trust for the vendee and as security for the payment of the agreed consideration.'" Such statements do not change the reality of Michigan law. Under a land sale contract, unlike most mortgages, "performance remains due to some extent on both sides" and the failure of either party to fulfill his or her obligations would excuse the other from continued performance.

The *Britton* court and the Terrells also cite *In re Booth*, 19 B.R. 53 (Bankr.D.Utah 1982), a controversial decision holding that land contracts are not executory when the debtor is the vendee. The *Booth* court believed that "executory contracts are measured not by a mutuality of commitments but by the nature of the parties and the goals of reorganization." *Booth*, 19 B.R. at 56. In examining these goals, the court concluded that by treating a land contract as an executory contract, a vendor would "receive an advantage over other lienors, and the estate may be deprived of whatever equity exists in the property." *Id.* at 58. The court recognized that 11 U.S.C. § 365(i) and (j) compelled the court to treat some land contracts, those where the debtor is the vendor, as executory but believed that creating such an inconsistency comported with the "spirit" of section 365(i) and (j), and was preferable to treating non-debtor vendees more favorably than non-debtor vendors. *Id.* at 62.[7]

While the *Booth* court's policy recommendation may well be one that Congress may choose to accept, we do not believe that it is appropriate for a court to make such a decision by judicial fiat. More importantly, the *Booth* result would require us to hold that the executory nature of a land sale contract turns not on the terms of the contract, but on the vendor or vendee status of the person who files for bankruptcy. The obligations yet to be performed under a land sale contract do not change when it is the vendee rather than the vendor who files for bankruptcy. In fact, the terms of the contract do not change when either party files for bankruptcy.

Applying the definition of executory contract intended by Congress, we conclude that this land sale contract is executory within the meaning of section 365, since under state law both parties have substantial obligations left to perform. Accordingly, we REVERSE the decision of the District Court and REMAND this case for further proceedings not inconsistent with the result herein.

---

a failure or inability to deliver title is a material breach which can excuse the vendee's continued performance and give rise to an action for recision or specific performance.

7. Oddly, it is the vendor who complains of unfairness in this case.