**In re EAGLE–PICHER INDUSTRIES, INC., et al., Debtors.**

**Consolidated No. 1–91–00100.**

United States Bankruptcy Court, S.D. Ohio, W.D.

April 28, 1992.

See also 139 B.R. 869, 137 B.R. 679.

Edmund J. Adams, Cincinnati, Ohio, for debtors.

Robert S. Balantzow, Cleveland, Ohio, for future claimants.

Carolyn J. Buller, Cleveland, Ohio, for Unsecured Creditors' Committee.

Kevin E. Irwin, Cincinnati, Ohio, for Injury Claimants' Committee.

Irving Harris, Cincinnati, Ohio, for Equity Sec. Holders' Committee.

Donald J. Hutchinson, Miller, Canfield, Paddock & Stone, Detroit, Mich., for Comerica Bank.

Stephen Karotkin, Weil, Gotshal & Manges, New York City, for Eagle–Picher.

DECISION ON COMERICA MOTIONS (1) FOR RELIEF FROM AUTOMATIC STAY, and (2) REQUIRING EAGLE–PICHER INDUSTRIES, INC. TO TIMELY PERFORM OBLIGATIONS OR ASSUME OR REJECT LEASE PURCHASE CONTRACT

BURTON PERLMAN, Chief Judge.

Comerica Bank ("Bank"), an indenture trustee-lender, has filed two motions. In the first, it seeks relief from automatic stay and adequate protection payments. In its second motion, Comerica invokes 11 U.S.C. § 365, seeking timely performance pursuant to § 365(d)(3) and/or the setting of a time to assume or reject pursuant to § 365(d)(2). What is involved here is a contractual relationship between Eagle–Picher Industries, Inc. (hereafter "EPI"), debtor herein, the Township of Kalkaska,

Michigan ("Township"), and the Bank. This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A), (G), (K) and (M).

The facts before us are undisputed. On August 1, 1977, EPI conveyed to the Township certain real and personal property ("Kalkaska Property") located in the Township in connection with the Township's agreement to finance EPI's initial acquisition of the property, including items of machinery and equipment purchased for use on the Kalkaska Property. The Township, in turn, leased the Kalkaska Property back to EPI pursuant to a "Lease Purchase Contract". The Township funded the project by issuing a series of Industrial Development Revenue Bonds in the original principal amount of $1.6 million. The Mortgage and Indenture of Trust ("Indenture"), dated August 1, 1977, set forth the terms of the bonds and various agreements among the Bank, as indenture trustee, the Township and the bondholders. Under the terms of the Lease Purchase Contract, EPI transferred title to the real property to the Township and granted the Township a security interest in the personal property located on the premises. The Township, in turn, granted the Bank liens on and a security interest in the personal property to secure the obligations under the Indenture. The Lease Purchase Contract requires EPI to purchase the Kalkaska Property for the nominal sum of $100.00 upon EPI's full payment of the bonds. EPI is scheduled, pursuant to the Indenture, to complete payment of principal and interest on the bonds in the year 2002. EPI also has the option of buying the Kalkaska Property at any time by paying the amounts necessary to redeem and retire the bonds. Upon full payment of the bonds, the Indenture provides that the Township will transfer title to EPI.

According to the Lease Purchase Contract, EPI must make payments to the Township equal to the amount of principal, interest and premiums that the Township is required to pay the Bank under the Indenture. The Township, in turn, must use EPI's payments under the Lease Purchase Contract to pay the bonds. The parties acknowledge that they entered into this transaction so that they could enjoy the tax advantages of Industrial Revenue Bonds.

The Bank brought its motions before the court as a result of EPI's failure to make required payments due in January, 1991 and July, 1991 which, in turn, caused the Township to default on its payments to the Bank due on February 1, 1991 and August 1, 1991. Under the terms of the Lease Purchase Contract, Comerica is entitled to reenter and take possession of the Real and Personal Property. The Bank's right to exercise these remedies, of course, was stayed pursuant to 11 U.S.C. § 362. Accordingly, the Bank seeks adequate protection payments or, in the alternative, a court order requiring EPI to assume or reject the Lease Purchase Contract pursuant to § 365(d)(2). An assuming debtor is required by § 365(b)(1) to cure arrearages and make timely payments. We resolved the issue of adequate protection at the hearing by determining that the Bank's interest was adequately protected by an equity cushion. *See In re Mellor*, 734 F.2d 1396, 1400 (9th Cir.1984) (an equity cushion is "classic form of [adequate protection] for a secured debt....); *In re Mr. D. Realty Co.*, 27 B.R. 359, 365 (Bankr.S.D.Ohio 1983) (ample equity cushion provided adequate protection of secured creditor's interest in real estate).

This brings us to a consideration of the Bank's motion for assumption or rejection of the Lease Purchase Contract under § 365. The Bank argues that the Lease Purchase Contract is a lease, and that EPI must assume or reject its interest pursuant to 11 U.S.C. § 365(d)(4). This section requires EPI to decide whether to assume or reject leases within 60 days or such additional time as the court, for cause, may allow. Alternatively, the Bank asserts that even if the court finds that the Lease Purchase Contract is not a lease, the agreement is nonetheless an executory contract which EPI must assume or reject under § 365.

EPI, on the other hand, argues that the Lease Purchase Contract is a secured fi-

nancing transaction rather than a lease. The language of the Contract, EPI says, reveals the parties' intention that the transaction be a secured financing purchase. EPI contends further that the transaction is not a lease because the Contract imbues EPI with all of the indicia of ownership, most importantly the requirement that EPI purchase the Kalkaska Property for a nominal sum upon the expiration of the term of the bonds. EPI additionally asserts that this transaction is analogous to a mortgage rather than an executory contract or an installment land sale contract of the type held executory by the Sixth Circuit in *Terrell v. Albaugh*, 892 F.2d 469 (6th Cir. 1989).

With respect to the Lease Purchase Contract, we agree with EPI that it is properly characterized as a secured financing transaction rather than a lease. Whether a transaction is a lease or a secured financing agreement is determined according to the intent of the parties at the time of the execution of the agreement. *Fox v. Peck Iron and Metal Co.*, 25 B.R. 674, 688 (Bankr.S.D.Cal.1982). This determination is made by weighing all relevant facts and circumstances on a case-by-case basis. *Id.* at 688. Relevant factors indicating that the parties in the instant proceeding intended to enter into a secured financing agreement include EPI's obligation to purchase the project for the nominal sum of $100.00, EPI's right to terminate the "lease" by redeeming the Bonds, EPI's obligation to complete the project if the Bonds do not produce sufficient funds, the fact that the payments to the Township equal those required to pay the Bonds, and the obligation of EPI to pay all taxes, insurance and maintenance with respect to the project. *See, e.g., In re Opelika Mfg.*, 67 B.R. 169, 171 (Bankr.N.D.Ill.1986); *In re Independence Village, Inc.*, 52 B.R. 715, 717–20 (Bankr.E.D.Mich.1985).

Resolution of the question of lease versus sale does not, however, conclude the matter, for we must still consider the issue of whether the Lease Purchase Contract is nonetheless an executory contract pursuant to § 365. In *Terrell v. Albaugh*, the Sixth Circuit defined an executory contract in a bankruptcy context as a contract under which the obligations of the debtor and the other party remain unperformed such that the failure of either to complete performance would be a material breach excusing the other's performance. *In re Terrell*, 892 F.2d at 471. The *Terrell* court further found that while federal law defines the term "executory contract", the question of whether failure to perform gives rise to a material breach must be determined according to state contract law. *Id.* at 471–72. For *Terrell*, as in the case before us, the pertinent state law was that of Michigan.

In *Terrell*, the Sixth Circuit held that under Michigan law, the land sale contract there in issue was executory because performance of the material obligations remained due on both sides. The failure of the vendee, on the one hand, to make installment payments under the land contract, and the failure of the vendor to surrender title on the other, would give rise to a material breach allowing the respective party to avoid continued performance. *Terrell*, 892 F.2d at 472. Further, the failure of the vendee to continue paying installments would have given the vendor several remedies for breach, including forfeiture and foreclosure. *Id.* Likewise, a vendor's failure to transfer title at the appropriate time would have entitled the vendee to sue for specific performance or to cease performance and sue for rescission. *Id.* The *Terrell* court therefore regarded the transfer of title as a significant legal obligation which rendered the land contract executory. This holding is consistent with Michigan case law distinguishing land contracts from mortgages. In a mortgage in Michigan, title rests with the mortgagor and the mortgagee retains a lien, while under a land contract, the vendee holds only an equitable interest and the vendor retains title until the payments are completed. *Lutz v. Dutmer*, 286 Mich. 467, 282 N.W. 431, 435–36 (1938); *Cady v. Taggart*, 223 Mich. 191, 193 N.W. 848, 849 (1923); *The Midwest Bank v. O'Connell*, 158 Mich.App. 565, 405 N.W.2d 201, 203

(1987) (mortgagee holds no title to the mortgaged premises).

In the instant case, the Lease Purchase Contract and the Indenture provide that Michigan law applies. The transaction at issue is an executory contract because under Michigan law, EPI's obligation to make timely payments to the Township and the Township's obligation to transfer title to the property upon EPI's completion of the payments both constitute unperformed obligations. It is immaterial that the Township is merely a conduit for an agreement essentially between EPI and the Bank. The transfer of title by the Township to EPI upon completion of its payments is not a mere formality, but an obligation which, if unperformed, would result in an actionable, material breach in EPI's favor.

Accordingly, the motion of Comerica Bank that Eagle–Picher Industries, Inc. assume or reject the Lease Purchase Contract will be granted. Debtors must assume or reject the Lease Purchase Contract pursuant to § 365(d)(3) within 60 days from the date the Order on this decision is entered.