974 F.2d 1339
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SCA TAX EXEMPT FUND LIMITED PARTNERSHIP, Plaintiff-Appellant,
v.
Barry KAHN, Jerry McGinty, Richard Hettig, John Hettig,
Hettig Pension/Retirement, Hettig/Kahn
Development, Hettig & Company,
Defendants-Appellees.
 No. 91-5912.
 United States Court of Appeals, Sixth Circuit.
 Sept. 10, 1992.
 
 Before BOYCE F. MARTIN, Jr. and RYAN, Circuit Judges, and WILHOIT, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff SCA Tax Exempt Fund Limited Partnership appeals from the district court's grant of summary judgment to defendants Barry Kahn, Jerry McGinty, Richard Hettig, John Hettig, Hettig Pension/Retirement, Hettig/Kahn Development, and Hettig & Company, in SCA's diversity contract action against defendants. SCA's action was based on an agreement, the Limited Operating Deficit Guaranty, under which the defendants agreed to fund the operating deficits of a developer.
 
 On appeal, SCA raises three issues:
 
 2
 1. Does section 524(e) of the Bankruptcy Code, providing that a bankruptcy does not discharge the liabilities of non-filing co-debtors, apply to the guaranty?
 
 
 3
 2. Is the guaranty a "contract ... of" the developer, thus implicating section 365(c)(2) of the Bankruptcy Code, which provides that a trustee in bankruptcy can not assume an executory contract under which a party has contracted to loan money to the debtor?
 
 
 4
 2. Is the guaranty an executory contract, thus implicating section 365(c)(2) of the Bankruptcy Code?
 
 
 5
 We conclude that the summary judgments should be affirmed.
 
 I.
 
 6
 Plaintiff SCA is a Delaware limited partnership. In October 1988, SCA purchased a bond in the amount of $17,950,000 from the Health, Education and Housing Facilities Board of Knox County, Tennessee. The proceeds of the bond were loaned to Steeplechase Falls Ventures, Ltd., a limited partnership (the Developer). The Developer was to use the funds to construct Steeplechase Falls Apartments, an apartment project in Knoxville (the Development). In addition to purchasing the bond, SCA also made a direct loan of $150,000 to the Developer. Thus, SCA's total commitment to the Development was $18,100,000. The defendants are limited partners in the Developer.
 
 
 7
 Although Knox County issued the bond, it was secured solely by the apartment project and its revenues, not the revenue of Knox County. As part of the financing requirements, the defendants executed a document styled "Limited Operating Deficit Guaranty." The guaranty provided:
 
 
 8
 If at any time during the three (3) year period following the Completion Date or until Sustaining Occupancy ... the Developer requires any funds in connection with the ownership and operation of the Development, including ... funds for the payment of taxes, payments of principal and interest on the Note ... then in such event the Guarantor agrees to lend to the Developer all such funds which may be required to pay, when due, all such expenses....[1]
 
 
 9
 The defendants were not, however, obligated to advance additional funds if the loss exceeded $1,810,000. Defendants executed the guaranty as part of the consideration for SCA to purchase the bond.
 
 
 10
 In September 1989, the Developer, but not the defendants, filed a Chapter 7 bankruptcy petition. The parties have stipulated that at the time of filing, the Development had not yet experienced any operating deficits. The defendants, however, apparently realized that the Development would soon begin losing money, and hoped that filing under Chapter 7 would relieve them of their obligations under the guaranty.
 
 
 11
 After the Chapter 7 filing, the Development incurred significant operating deficits, totaling over $900,000 as of October 1990 and projected to exceed $1,810,000. The defendants did not provide money to the Developer to fund these deficits.
 
 
 12
 In November 1989, SCA filed a three-count complaint, one count of which sought a declaratory judgment that defendants are liable for deficits of the Developer up to $1,810,000.[2] On cross-motions for summary judgment, the district court granted summary judgment to defendants on two counts. The parties then stipulated that the remainder of the case should be dismissed. The district court, in June 1991, dismissed the third count without prejudice, and entered final judgment for the defendants. SCA timely appeals.
 
 II.
 
 13
 This court's review of a grant of summary judgment is de novo, and we apply the same test as the district court. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). The court possesses diversity jurisdiction in this case, and the action is based on the deficit guaranty, a contract between the parties. In diversity cases, this court ordinarily construes contracts by applying the law of the forum state. In this case, the guaranty explicitly provides that the rights of all parties shall be governed by the law of Tennessee and neither party disputes the use of Tennessee law. The substantive rights of the parties to a contract are governed by the law of the state contemplated by the parties. Mackey v. Judy's Foods, Inc., 867 F.2d 325, 328 (6th Cir.1989). Tennessee law thus governs the interpretation of the guaranty.
 
 A.
 
 14
 Application of Section 524(e) of the Bankruptcy Code
 
 
 15
 This case involves two sections of the Bankruptcy Code, section 524(e) and 365(c)(2). We shall consider each, in turn. Section 524(e) provides:
 
 
 16
 Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.
 
 11 U.S.C. § 524(e).[3]
 
 17
 SCA argues that because section 524(e) applies to the guaranty, the liabilities of defendants under the guaranty are not subject to discharge under the separate bankruptcy proceeding. In the bankruptcy proceeding, the debtor is the Developer; the defendants have not declared personal bankruptcy. By pursuing this claim, SCA attempts to collect funds based on the guaranty. The guaranty is separate from the bond itself, and SCA's claim is separate from the bankruptcy proceeding.
 
 
 18
 The key to this issue is the proper characterization of the guaranty. In arguing that section 524(e) applies, SCA assumes that the guaranty is a loan guaranty, and that the defendants are thus loan guarantors. The defendants contend that the guaranty is not a loan guaranty but rather an agreement to lend money.
 
 
 19
 SCA claims that bankruptcy proceedings do not discharge the liability of a co-debtor guarantor upon a loan made to an entity that had declared bankruptcy if the co-debtor had not itself declared bankruptcy. Most of the cases on which SCA relies involved creditors seeking repayment from the guarantor of the loan where the co-debtor--the entity that actually received the loan proceeds--filed for bankruptcy. See, e.g., Union Carbide v. Newboles, 686 F.2d 593 (7th Cir.1982).[4]
 
 
 20
 In this case, however, the defendants did not promise to repay the loan if the Developer defaulted. The guaranty only provided that if the Development suffered operating deficits, the defendants "agree[ ] to lend to the Developer all such funds which may be required to pay" operating deficits up to $1,810,00. The district court found: "The word 'lend' in this context is plain, simple, and unambiguous." The guaranty does not even mention the bond. In sum, by its terms, the guaranty did not make the defendants co-debtors on the bond. Section 524 thus does not apply.
 
 
 21
 SCA makes two other arguments somewhat related to this issue. First, SCA argues that certain provisions of the deficit guaranty make it clear that the defendants undertook to fund the Developer's operating deficits absolutely and unconditionally. Factually, SCA is correct, for the guaranty states:
 
 
 22
 [T]he purpose and intent of the Guarantor that its obligations under this Guaranty shall be absolute and unconditional under any and all circumstances and it shall be released therefrom only upon payment of all sums due hereunder....
 
 
 23
 SCA argues that the defendants must fund the deficits, thus permitting the Developer to fulfill its bond obligations to SCA, even though the Developer is in bankruptcy.
 
 
 24
 The guaranty does give SCA, the bondholder, the right to enforce the guaranty. This means that SCA could require the defendants to loan funds to the Developer but for the bankruptcy of the Developer. The effect of the bankruptcy filing is, however, the key question of the appeal, and we analyze below the relevant provision of the Bankruptcy Code, section 365(c)(2).
 
 
 25
 Second, SCA argues that the district court's decision will effectively make all loan guarantees unenforceable following the bankruptcy of the principal obligor. This argument is meritless. The case law is very clear: loan guarantees are enforceable after the bankruptcy of the principal obligor. See Union Carbide, 686 F.2d at 594. The contract at issue here, however, is not a loan guarantee. Nowhere in the guaranty does it state that the defendants will pay the interest and principal due on the bond if the Developer cannot. SCA could have required the defendants to personally guarantee repayment of the bond, but SCA and the defendants did not enter into this kind of agreement.
 
 B.
 
 26
 Application of Section 365(c)(2) of the Bankruptcy Code
 
 
 27
 The Bankruptcy Code provides, in relevant part:
 
 
 28
 The trustee may not assume or assign an executory contract or unexpired lease of the debtor ... if--
 
 
 29
 ....
 
 
 30
 (2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor....
 
 
 31
 11 U.S.C. § 365(c). SCA argues that section 365 does not apply for two reasons: 1) the guaranty is not a contract of the debtor, and 2) it is not an executory contract.
 
 1.
 
 32
 The Guaranty as a Contract of the Developer
 
 
 33
 SCA contends that SCA, and not the Developer, is the real party to the contract; therefore, section 365(c)(2) does not apply to attempts by SCA to enforce the contract.
 
 
 34
 Section 365(c)(2) states that the "trustee may not assume or assign an executory contract or unexpired lease of the debtor." (Emphasis added.) Thus, we must determine whether the guaranty is a "contract ... of" the Developer. On this issue, the district court held:
 
 
 35
 [T]he Developer was an intended third-party beneficiary of the Deficit Guaranty, if not a party to it. It is plain that a purpose of the defendant Guarantors' promise in the Deficit Guaranty to cover the Developer's operating deficits from time to time up to a stated aggregate limit was to help to insure the Developer's financial viability.
 
 
 36
 Based on this reasoning, the district court concluded that the deficit guaranty was a contract of the Developer.
 
 
 37
 Although scant authority guides us on this question, we conclude that the district court correctly held that the guaranty was a contract of the Developer, thus implicating section 365(c)(2). We reach this conclusion based on three aspects of the guaranty, the first of which was discussed by the district court. We agree with the district court's conclusion that the Developer's status as an intended third party beneficiary is strong evidence that the guaranty is a contract of the Developer.
 
 
 38
 Inquiry into the Developer's status as an intended third party beneficiary implicates Tennessee law, which holds: "The requisites necessary to establish a third party beneficiary relationship are: (1) a valid contract made upon sufficient consideration between promisor and promisee; and (2) the clear intent to have the contract operate for the benefit of the third party." United Am. Bank of Memphis v. Gardner, 706 S.W.2d 639, 641 (Tenn.App.1985). Neither side disputes the Developer's status as an intended third party beneficiary of the guaranty, nor should they. SCA gave consideration for the guaranty in the form of its purchase of the bond, and SCA and the defendants clearly intended the guaranty to benefit the Developer.
 
 
 39
 Tennessee law also firmly establishes that an intended beneficiary may maintain an action in his own name against the promisor. Davidson & Jones Dev. Co. v. Elmore Dev. Co., 921 F.2d 1343, 1356 (6th Cir.1991). Thus, the Developer had the right to enforce the guaranty against the defendants, and if the Developer incurred losses but had not declared bankruptcy, it could have required the defendants to loan it funds to cover the losses. We conclude, as did the district court, that the existence of a right in the Developer to enforce the guaranty indicates that the guaranty was a contract of the Developer.
 
 
 40
 Going beyond the district court's analysis, we conclude that two other aspects of the guaranty indicate that it was a contract of the Developer. We note first that the guaranty required the Developer to take action other than merely accepting a benefit. The Developer must, under the guaranty, both incur a loss and agree to the loan terms. These steps constitute performance that SCA cannot, by itself, undertake. The guaranty is a contract of the Developer because the Developer must take action independent of SCA to receive benefits.
 
 
 41
 We note, in addition, that the nature of the defendants' potential performance under the guaranty indicates that it was a contract of the Developer. Under the guaranty, the performance does not run to SCA; rather, it runs directly to the Developer. The guaranty obligates the defendants to loan money to the Developer, not SCA. Further, the guaranty does not even give SCA first priority to the loan proceeds--the guaranty does not require the Developer to apply the proceeds to the bond obligations before paying other expenses but provides only that the loan proceeds shall be used to pay any expenses in connection with ownership. The fact that the defendants' performance under the guaranty runs to the Developer and not to SCA further indicates that the guaranty is a contract of the Developer.
 
 2.
 The Executory Nature of the Guaranty
 
 42
 SCA also contends that the guaranty is not an executory contract because SCA has already performed its obligations by buying the bond and loaning the Developer additional funds.
 
 
 43
 The district court did not specifically address an argument discussing the executory nature of the contract. Nevertheless, as to the application of section 365(c)(2), the district court held:
 
 
 44
 To the extent that SCA would have the defendant Guarantors make advances to the Developer to cover operating deficits with respect to the Project, the Court perceives no functional difference between this lawsuit and an attempt by a trustee in bankruptcy or a debtor-in-possession to enforce a prepetition contract to make a loan, to extend other debt financing, or to extend financial accommodations.
 
 
 45
 The district court construed the statute as creating "what is in effect a condition subsequent to a lender's contractual obligation to advance funds, that the obligation ceases if the borrower becomes bankrupt before the funds are advanced."
 
 
 46
 A proper characterization of the parties in relation to the guaranty is critical to the correct resolution of this issue. This case is unusual because it involves a possible executory contract in a third party beneficiary context. The guaranty is an odd contract--while SCA provided the consideration for the defendants' promise to fund the operating deficits, the defendants' performance was not to benefit SCA directly. Rather, the defendant's performance, loaning money, was to benefit the Developer who would then use the money to pay expenses on the Development, expenses that presumably include payments on the bond held by SCA.
 
 
 47
 This court has not addressed the specific subsection--section 365(c)(2)--at issue here. This court has, however, considered section 365 in the context of a land sale contract, and in so doing discussed the meaning of "executory contract." In In re Terrell, 892 F.2d 469 (6th Cir.1989), this court held:
 
 
 48
 The legislative history ... indicates that Congress intended the term to be defined as a contract "on which performance remains due to some extent on both sides."
 
 
 49
 Id. at 471 (quoting S.Rep. No. 95-989, 95th Cong., 2d Sess., at 58). Terrell also held that "federal law defines the term executory contract but that 'the question of the legal consequences of one party's failure to perform its remaining obligations under a contract is an issue of state contract law....' " 892 F.2d at 471 (quoting In re Cochise College Park, Inc., 703 F.2d 1339, 1348 n. 4 (9th Cir.1983)).
 
 
 50
 SCA argues that it has completely performed, and that there is nothing left for it to do. While this assertion may be factually correct, it is irrelevant because SCA's performance is not the proper focus. As we have held, the guaranty is a contract of the Developer. Thus, we must look to see whether any performance remains due on the part of the Developer, and, additionally, whether any performance remains due on the part of the defendants.
 
 
 51
 Turning initially to the question of the Developer's performance, we note that the district court held the Developer has not yet performed because the Developer did not incur operating losses while not in bankruptcy. We agree with the district court's holding that section 365(c)(2) effectively created a condition precedent in the contract--that the Developer not be in bankruptcy at the time it incurred operating deficits. The Developer has failed to fulfill this condition.
 
 
 52
 In addition, there is a further aspect to the performance required of the Developer: the Developer must agree to accept a loan. The guaranty does not provide that the defendants will give the Developer the money to fund the operating deficits; rather, it provides that the defendants must loan the money. Therefore, part of the remaining performance is for the Developer to promise to repay the loan at the interest rates specified in the guaranty. This promise is performance that has not yet occurred.
 
 
 53
 The question of the defendants' performance is easier. The guaranty calls for the defendants to loan money to the Developer; obviously the defendants have not done so. Thus, performance remains due on the part of the defendants.
 
 
 54
 SCA asserts that this court's decision in In re Edward M. Johnson and Assocs., Inc., 845 F.2d 1395 (6th Cir.1988), supports its position. In Johnson, the defendant contracted to sell all the stock in his company to a larger corporation. Part of the purchase agreement required the defendant to pay off certain accounts payable of his former company. After the defendant sold his company, it petitioned for bankruptcy. The trustee, on behalf of the defendant's former company, attempted to collect funds for the accounts payable pursuant to the agreement with defendant. This court held that the trustee, as trustee of an intended third party beneficiary to a contract, could enforce the contract.
 
 
 55
 SCA argues that Johnson supports its argument that SCA can enforce the guaranty, either directly or indirectly, by compelling the Developer to enforce it, thus requiring the defendants to loan funds to the Developer. SCA's reliance is misplaced. Johnson did not involve an executory contract--there was no performance that remained for the debtor-company. The accounts payable existed before the debtor-company petitioned for bankruptcy, and defendant had promised to pay those accounts before the petition in bankruptcy. In the present case, the guaranty is executory, and at the time of the bankruptcy petition the Developer had not incurred any losses.
 
 
 56
 We conclude that although SCA provided consideration for defendants' promise to loan money, for the purposes of applying section 365(c) of the Bankruptcy Code, the relevant parties to the guaranty are the Developer and the defendants. We further conclude that performance remains due on the part of both the Developer and the defendants. The guaranty is thus executory, and the Developer, now in bankruptcy, cannot assume the guaranty. Therefore, neither the Developer nor SCA may enforce the terms of the guaranty against the defendants.
 
 
 57
 As a final observation, we note that if SCA wanted the defendants to personally guarantee the repayment of the bond, it could have required the defendants to execute a conventional guaranty, requiring that if the Developer defaulted on the bond payments, SCA would gain the right to collect directly from the defendants. Nevertheless, SCA did not demand this type of guaranty. Instead, SCA required the defendants to execute the contract at issue, under which the defendants' liability to the Developer does not survive the Developer's bankruptcy filing. While this may not have been the result hoped for SCA, it is the result compelled by the language of the guaranty.
 
 III.
 
 58
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Henry R. Wilhoit, Jr., United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 The guaranty refers to the defendants, collectively, as the "Guarantor."
 
 
 [2]
 Counts II sought damages for a breach of contract, and Count III sought imposition of a constructive trust. In this appeal, SCA does not raise issues relating to these counts
 
 
 [3]
 The referenced exception, section 524(a)(3), is not relevant to this case
 
 
 [4]
 SCA also directs this court to Rich v. Clayton Mark & Co., 250 F.2d 622 (8th Cir.1957). While the Rich court required the co-signees of a letter guaranty to pay a debt of the principal obligor, the principal obligor in that case had not filed a bankruptcy petition. As such, we find Rich inapposite