In re Charles C. LONGMIRE, Clista E. Longmire, Debtors.

No. 03–56452.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

July 16, 2003.

James E. Nobile, Esq., Nobile, Needleman & Thompson LLC, Columbus, OH, for Debtors.

Larry J. McClatchey, Esq., Stephanie P. Union, Esq., Kegler, Brown, Hill & Ritter Co., L.P.A., Columbus, OH, for FYDA Freightliner of Columbus, Inc.

Frank M. Pees, Worthington, OH, Chapter 13 Trustee.

### OPINION AND ORDER DENYING DEBTORS' MOTION FOR TURNOVER AND DAMAGES

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on the debtors' motion for turnover and damages. FYDA Freightliner Columbus, Inc. ("FYDA") opposed the motion. At the debtors' request, the Court conducted an expedited hearing on the motion on May 27, 2003. At the conclusion of the hearing, the Court requested the parties to submit their closing arguments in writing.

Having considered the testimony presented, the various exhibits admitted into evidence, and the closing arguments, the

Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. On or about January 31, 2003, FYDA and Charles C. Longmire, one of the debtors herein, entered into an agreement by which FYDA undertook to purchase from the debtor a certain 1996 Peterbilt tractor for the sum of $5,214.86. *See* Exhibit 2. Pursuant to this agreement, FYDA took possession of the 1996 Peterbilt.

2. At the time FYDA agreed to purchase the 1996 Peterbilt, Cedar Capital, L.L.C. ("Cedar Capital") owned the tractor under an Iowa certificate of title. Cedar Capital had leased the tractor to the debtor pursuant to an equipment lease agreement. The debtor believed that under the terms of this lease, Cedar Capital would transfer title to him once he had made all of the payments required. The debtor, however, had not made all of the lease payments at the time he sold the 1996 Peterbilt to FYDA.

3. FYDA issued a check to Cedar Capital on January 31, 2003, for the purchase of the 1996 Peterbilt. *See* Exhibit B. Cedar Capital also mailed the original Iowa certificate of title for the tractor to FYDA at that time.

4. Also on or about January 31, 2003, FYDA and the debtor entered into a second agreement under which the debtor would buy back the 1996 Peterbilt for the same $5,214.86 plus a $70.00 registration fee. As part of this transaction, the debtor executed a cognovit promissory note in favor of FYDA in the amount of $5,284.86. The debtor promised to make three monthly payments of $1,761.62 to FYDA beginning March 1, 2003.

5. In connection with the debtor's repurchase of the 1996 Peterbilt, FYDA did not cause a new certificate of title to be issued listing the debtor as owner and itself as lienholder; nor did FYDA immediately apply for an Ohio certificate of title evidencing the transfer of ownership of the 1996 Peterbilt from Cedar Capital to FYDA.

6. Following the execution of the two purchase agreements, FYDA has remained in possession of the 1996 Peterbilt at all times. The debtor did not demand return of the tractor at any time prior to the chapter 13 filing.

7. The debtor did not make the first payment due FYDA on March 1, 2003, nor any payment thereafter. The debtor initially advised FYDA that the March payment would be a couple weeks late. In early April 2003, the debtor's wife informed FYDA that they were still unable to make the payment, but could pay within the next few weeks.

8. On April 30, 2003, the debtor and his wife filed a joint voluntary petition under chapter 13 of the Bankruptcy Code. They listed the 1996 Peterbilt as an asset of their estate. Their chapter 13 plan proposed to treat FYDA's claim as unsecured and demanded that FYDA return possession of the tractor.

9. On May 2, 2003, the debtor's attorney notified FYDA of the chapter 13 filing by facsimile transmission and demanded in writing that FYDA return the 1996 Peterbilt.

10. Following notice of the chapter 13 filing, FYDA refused to return the 1996 Peterbilt and caused an Ohio certificate of title to be issued on May 2, 2003, listing FYDA as the owner of the tractor.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in

this district. This is a core proceeding which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(E).

 2. The agreement under which the debtor was to purchase the 1996 Peterbilt back from FYDA is an executory contract. *See Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469, 472 (6th Cir.1989). The debtor was obligated to make the monthly payments under the agreement, the last of which was due postpetition; and FYDA had yet to deliver the 1996 Peterbilt to the debtor.

3. The debtor's failure to make the March and April payments to FYDA constituted a prepetition default under the purchase agreement.

4. Because the chapter 13 plan does not assume the contract and does not provide adequate assurance of a prompt cure of the debtor's default, FYDA is not obligated to turn over the 1996 Peterbilt to the debtor. *See* 11 U.S.C. §§ 365(b)(1) and 1322(b)(7).

5. The debtor failed to establish that he possessed an ownership interest in the 1996 Peterbilt at the time of the chapter 13 filing. Rather, any interest of the debtor was limited to his rights under the repurchase agreement with FYDA, which he already had breached.

6. Because the debtor has no ownership interest in the 1996 Peterbilt, FYDA's actions to obtain an Ohio certificate of title did not violate the automatic stay imposed by 11 U.S.C. § 362(a).

### CONCLUSION

For the foregoing reasons, the debtor's motion for turnover and damages is **DENIED**.

**IT IS SO ORDERED.**