## MEAD *v.* PINYARD.

**APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MICHIGAN.**

No. 754. Submitted January 20, 1876.—Decided February 7, 1876.

The proof does not make out a case that calls upon this court to overrule the judgment of the trial court on questions of fact.

THE case is stated in the opinion.

MR. JUSTICE HUNT delivered the opinion of the court.

The appeal in this case is based chiefly upon alleged errors of the court below in determining the facts. The points of fact most strongly presented, in which it is alleged that the error was committed, are the following:

1. The finding that the contract held by Collins was assigned and delivered by him to his sister, Mrs. Gamble, in November, 1862; 2. The finding that Willard did not, in June, 1861, convey by deed to Collins, the property described in his contract; and 3dly, The denial of the statement that Willard, after having held his deed unrecorded for about a year, returned it to Collins and had another deed made to Mrs. Gamble. The importance of these propositions of fact is undoubted.

If title had been vested in Collins by the delivery of a deed from Willard, it could not be devested, except by a deed signed and sealed by Collins. Handing back the deed received by him would not produce that result. A new deed, therefore, from Willard to Mrs. Gamble, would be entirely ineffectual. Nothing would pass by it. The performance of the contract on his part by Pinyard,

and which performance must be made out to enable him to sustain this action, depends upon the validity of the deed from Collins to Mrs. Gamble. The fact disputed is, therefore, the point upon which the case turns.

We do not, however, agree with the appellants in their estimate of the testimony. Willard and Collins are the only persons who could certainly know how the fact was. They were both called as witnesses, and testified on the subject. Collins testified positively and explicitly, as of his own knowledge and recollection, that the assignment to Mrs. Gamble was made at its date, in 1862; that no deed was ever made to him by Willard or to his wife, but that the deed was made to Mrs. Gamble in 1863. He denies that he ever made any statement to the contrary to John R. Parsons.

Willard testifies that he gave a deed to Collins, which was afterwards returned to him, and a deed made, at his request, in the name of Mrs. Gamble. Parsons testified that Collins told him, in December, 1862, that he had a deed of the premises, and that he received them free and clear.

There are many circumstances connected with the evidence of the witnesses to which it is not necessary to allude. It may, however, be mentioned that Mr. Willard admits that he afterwards gave a third deed of the same premises to Mr. Parsons. Mr. Parsons is one of the prominent actors in the drama throughout, and a party defendant in the suit. Again, no trace or memorandum is pretended to be found of the existence of the deed said to have been given to Mr. Collins. Mr. Willard was a business man, a real estate dealer; he always made duplicates of his contracts and preserved all his papers, occasionally overhauling them and burning up. It would be quite likely, if such a prior deed had been made, that there would have been some sign of it remaining. This witness testifies, after the lapse of ten years, (as all of them do,) after having suffered severely from malarial fever, from cerebro-spinal-meningitis, which affected him so seriously that a commission of lunacy was issued against him, and his property was given in charge of a commission.

We certainly do not see a case that calls upon us to overrule the judgment of the court trying the cause, upon these questions of fact.

It is strenuously insisted again, by the appellants, that Pinyard never performed that part of his contract where he agreed that "the title to the premises deeded to Spallinger should be perfected and the mortgage settled between A. M. Collins and Parsons." If

it became clear that the Parson mortgage was invalid, and if the possession of the premises was placed in Spallinger, as his assignee, and that the title was completed to their satisfaction or that their conduct was such as to create a satisfaction in law of their rights under this covenant, the mortgage will be deemed to have been "settled."

The court below found as a fact, and we believe correctly, that when Collins gave the mortgage referred to he had no title to the premises mortgaged, either legal or equitable. As he never received a deed to himself from Willard he never had the legal title. His equitable title was based upon the contract of purchase and sale executed to him by Willard, but this he had assigned to Mrs. Gamble in November, 1862, while his mortgage to Parsons was not executed until a period subsequent to that date. When he executed the mortgage to Parsons he had no title to the premises mortgaged, either legal or equitable. There was nothing to settle.

This property in question under the mortgage to Parsons was the same that was conveyed by Willard to Mrs. Gamble. She conveyed to Pinyard and Pinyard to Spallinger, in performance of the contract to enforce which this suit is brought. As has been stated, Collins having no title, legal or equitable, made a mortgage upon the same to John R. Parsons. A contest arose between Parsons and Spallinger which became the subject of a foreclosure suit, an ejectment and a forcible entry and detainer. This was while Spallinger was the owner under his deed from Mrs. Gamble, and he was the party to these contests against one Hubbard, in possession under Parsons, who defended the suit. Spallinger was at first unsuccessful, but finally regained possession, moving upon the premises, as Collins testifies, with his wife, children and furniture. Spallinger continued in possession until he left for parts unknown. While having the title and being thus in possession he settled the difficulties with Hubbard and sold to the defendant the Reed contract for the farm he had previously sold to Pinyard, and disappeared.

This seems to dispose of the difficulty. Spallinger settled his controversies with Hubbard and Parsons as he thought best, and if the defendants are his representatives by assignment or otherwise, settlement is conclusive upon them. If Spallinger made no transfer of his contract with Pinyard, as we understand to be the fact, then no one represents him, and the difficulty is settled by the acquiescence of the only person interested. Neither Mr. Mead, Mr. Parsons, Mr. Gates or Mr. Bill had anything to do with the mat-

ter. . Pinyard testifies that he gave a warranty deed to Spallinger, and that he seemed to be entirely satisfied, and that he never requested that anything further should be done.

Pinyard alleges in the complaint that Spallinger conveyed the lot to Parsons. This Parsons in his answer denies. It is not alleged by any one, so far as we can discover, that Spallinger gave to any person an interest in or claim growing out of the covenant referred to. All questions upon the contract between Pinyard and Spallinger and its performance, may be considered as at an end.

We agree with the court below that the equities are strongly in favor of Pinyard, and we see no legal objections to their enforcement.

The decree of the court below is                     *Affirmed.*

*Mr. E. S. Smith* for appellants.

*Mr. J. B. Fitzgerald* and *Mr. Edward Bacon* for appellee.