## Ford's Administratrix v. Bank of Hartford et al.

(Decided Oct. 20, 1933.)

R. MILLER HOLLAND for appellant.
CARY, MILLER & KIRK for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

The Bank of Hartford of Hartford, Ky., was closed in March, 1926, by the banking commissioner because of insolvency. For a number of years prior thereto, J. W. Ford had been president of this bank. In May, 1927, he died, and the appellant, Jessie R. Simmerman, his only child, was appointed administratrix with the will annexed of his estate. At the time of his death, Mr. Ford was about 85 years old. His physician who treated him for about two years before his death testifies that Mr. Ford "had a degenerate condition of the heart and kidneys that comes on with old age, including a thickening of the membranes of the brain, resulting in senile dementia," and that in his judgment Mr. Ford had been in this condition for at least three or four years prior to his death; that during the two years he did attend him, Mr. Ford was in no mental or physical condition to attend to business, nor did he think that Mr. Ford could have done so during three or four years prior to his death. During these years, Mr. Ford's daughter, the appellant, and her daughter, together with appellant's husband, R. E. Lee Simmerman, lived in the same house with Mr. Ford. R. E. Lee Simmerman was a director of the bank and its attorney. He also attended to Mr. Ford's legal affairs and to some extent his business affairs. The appellant collected the rents from her father's property and attended to his banking business.

On June 20, 1923, the appellant took to the Bank of Hartford eight treasury notes of the United States of America belonging to her father and deposited them with the bank for safe-keeping. The bank issued to her the following receipt:

"Hartford, Ky., June 20, 1923.

"The undersigned Bank has received for safe

keeping and J. W. Ford, of Hartford, Ky., has deposited the following described Treasury Notes, Series B-1927, 4¾%.

Treas. Note Series B-1927, 4¾% Int. No. 152844
Amount .......................................$1000.00
Treas. Note Series B-1927, 4¾% Int. No. 152845
Amount ....................................... 1000.00
Treas. Note Series B-1927, 4¾% Int. No. 152846
Amount ....................................... 1000.00
Treas. Note Series B-1927, 4¾% Int. No. 152847
Amount ....................................... 1000.00
Treas. Note Series B-1927, 4¾% Int. No. 152848
Amount ....................................... 1000.00
Treas. Note Series B-1927, 4¾% Int. No. 152849
Amount ....................................... 1000.00
Treas. Note Series B-1927, 4¾% Int. No. 152850
Amount ....................................... 1000.00
Treas. Note Series B-1927, 4¾% Int. No. 152851
Amount ....................................... 1000.00

Aggregate Par Value .........................$8000.00

"This receipt is not negotiable.

"Bank of Hartford, Ky.
"By Margaret Marks,
"Asst. Cashier."

These treasury notes or certificates, called in the record "bonds," were seen by Mrs. Simmerman in the custody of the bank as late as the fall of 1925, when an officer of the bank clipped the interest coupons therefrom and credited Mr. Ford's bank account with the amount thereof. In the fall of 1925, the Bank of Hartford was in very straitened circumstances. The banking commissioner of the state was pressing it hard to build up its reserves, to charge off worthless notes, and to get its house in order. The bank was borrowing money on notes it held, amending its articles of incorporation to increase its borrowing power, and making great efforts to comply with the demands of the banking department. Among the notes due the bank at this time was one for $11,000, executed by R. E. Lee Simmerman. The records of the bank disclose that on Friday, November 6, 1925, this note of R. E. Lee Simmerman was paid by the execution of a renewal note of $3,000, and a payment of $8,000, and that on the same day the bond account of the bank was increased by

$8,000, and that these $8,000 of bonds, together with the $3,000 renewal note offset the $11,000 note of Simmerman that day discharged. The bank records further disclose that on Saturday, November 28, 1925, the bond account of the bank was diminished by $8,000 and that on the same day Mr. Simmerman gave his check to the order of the Bank of Hartford on the First National Bank of Owensboro for $7,860 together with a check on his account at the Bank of Hartford for $140. Simmerman had created the deposit of $7,860 in the First National Bank at Owensboro on which he thus drew two days previous to this payment made the Bank of Hartford by borrowing from the First National Bank the sum of $8,000; the $7,860 being the amount of the loan less the discount. To secure the payment of this loan, Simmerman pledged with the First National Bank the eight treasury certificates which had been deposited by Mr. Ford with the Bank of Hartford in 1923. Mr. Simmerman suffered a stroke of paralysis in the early part of 1926 and has since died. It is stipulated that at the time the banking commissioner took charge of the bank in March, 1926, there was on deposit in the bank cash amounting to $11,612.72, which amount the banking commissioner took charge of to use in liquidating the bank and that the bank also had on deposit in the First National Bank of Owensboro the sum of $20,475.03. During Mr. Ford's lifetime no effort seems to have been made by him or by any one for him to assert any claim against the bank or the banking commissioner under the receipt given for the deposit of these treasury certificates in 1923. However, after Mr. Ford's death and that of Mr. Simmerman, the appellant, as the administratrix of her father's estate, by this action sought to fasten liability on the Bank of Hartford for converting these bonds to its own use and to assert a lien on the cash on hand in the bank at the time of its closing to secure her as a preferred claimant in the liquidation of the bank. The banking commissioner by his original answer, after putting in issue the ownership of these treasury certificates by Mr. Ford and the conversion of them by the bank, in substance set out the history of these treasury certificates; how they came into the possession of the bank and finally wound up in the possession of the Owensboro bank as we have set it out above, and which the proof in this case established. The banking commissioner then undertook to plead an estoppel

against the estate of J. W. Ford to assert the claim here set up by his administratrix. We need not discuss this asserted estoppel because later the banking commissioner came in and withdrew in toto his original answer and filed an amended answer in which he denied on information and belief everything set up in the petition, and then in a separate paragraph, after alleging conditionally that if these treasury notes took the course they did, averred that the estate of J. W. Ford was estopped to assert the claim here set up because the bank had gotten into the condition it had because of the negligence and carelessness of directors of the bank, including Ford and Simmerman; and further because Ford had acquiesced in such disposition of the treasury certificates, and still further because these certificates had been disposed of, not by the bank, but by Simmerman acting for and on behalf of Ford and with the latter's full knowledge and consent. A demurrer to this estoppel was overruled, and thereupon it was put in issue by the appellant's reply.

No objections except in one or two trivial instances were interposed to any of the testimony given on either side, and no exceptions were filed thereto so far as this record shows in the circuit court. Although perhaps some of the testimony might have been ruled out as incompetent had timely exceptions been filed, yet since none was filed and since the testimony was certainly relevant, it will have to be considered in the disposition of this case. The trial court on final submission of this cause dismissed the petition of the appellant, plaintiff below, and this appeal results.

At the outset, the appellee contends that the proof fails to show that the certificate here in question belong to J. W. Ford. The appellee concedes that there was a bailment of these bonds. This being true, the appellee is met with the general rule that the bailee may not deny the title of the bailor. See Stephens v. Vaughan, 4 J. J. Marsh. 206, 20 Am. Dec. 216; 6 C. J. 1108; 3 R. C. L. 86 et seq. Of course, there are many exceptions to this general rule, such as the bailee may show that he has been deprived of the bailed property by process of law or has yielded possession to one having paramount title, or that he is defending on the title and right and by the authority of a third person, or that the bailor himself was a mere agent and that the re-

turn of the property to him has been forbidden by his principal. Perhaps there are still other exceptions to the general rule, but the appellee in this case does not undertake to bring himself within any of the exceptions to the general rule, but it is simply resting on an attempted denial of title in the bailor. Not showing that the bailee comes within any of the exceptions, the bank and banking commissioner are clearly estopped under the receipt and bailment to deny the title of Mr. Ford to these certificates. But beyond this, although the proof is perhaps scanty and not as direct as it might be, yet sufficient appears to establish that these certificates did belong to Mr. Ford. Conceding arguendo the sufficiency in law of the estoppel pleaded, we are yet met with the fact that it is not supported by the evidence. There was not a line of proof to indicate that the insolvent condition of the bank was brought about by any carelessness, negligence, or misdoing on the part of either Ford or Simmerman. It was shown that Mr. Simmerman had access to the vaults of the bank, as did also Mr. Ford when he came to the bank; but it was not shown that at the time these certificates were taken from the bank and found their way to the Owensboro bank, Mr. Ford was ever at the Hartford bank. Indeed, the proof tends to establish that due to his mental and physical condition, he was unable to leave home. True it is that some of the minutes of the bank at this time appeared to have been signed by Mr. Ford, but it seems that such minutes as were signed by him were signed at his home to which the minute book was taken. There is an entire absence of proof to show that Mr. Ford ever acquiesced in the disposition of these certificates which took place. It is true he made no claim against the bank after its closing, but it is in evidence that he stated on the closing of the bank that he thanked God that he still had his notes and his bonds. His failure thereafter to assert his claim was undoubtedly due to the mental and physical condition in which he then was and concerning which his physician testified, there being no proof to the contrary. The evidence which discloses that Mr. Simmerman attended to the business of Mr. Ford and acted as his counsel in his law business does not without more establish any right on the part of Mr. Simmerman to use Mr. Ford's treasury certificates in the discharge of his own obligation to the bank and there is no doubt but that is just what

happened. Zaami v. Joseph Denunzio Fruit Co., 182 Ky. 177, 206 S. W. 272. In this case, Catherine Zaami, the owner of certain real estate, sold it to Mr. Charles Scholtz, Jr., the president of the Joseph Denunzio Fruit Company. Mrs. Zaami at the time was in Italy, and she directed that the part of the purchase price which was coming to her be paid to her brother or her husband. It was paid to her brother by check, he at once indorsing the check over to the fruit company in discharge of a debt of the Peter Zaami Company, a corporation in which he and Mrs. Zaami's husband were interested. This payment was made without the knowledge or consent of Mrs. Zaami. Later she sued to recover the amount of the check so indorsed to the fruit company. Her right to recover was upheld. See, also, Todd's Ex'r et al. v. First National Bank et al., 173 Ky. 60, 190 S. W. 468. If Mr. Simmerman took the bonds from the vault, it must not be forgotten that he was an officer or at least an agent of the bank, and it must not also be forgotten that all of that which was done was accomplished with the full knowledge and acquiescence of the bank because all of the transactions were scrupulously entered on the records of the bank. Hence it is clear the bank participated in the conversion of these bonds and that their proceeds were traced to the possession of the bank. The bank is clearly liable on the claim asserted.

It having been stipulated that the bank had on hand at the time of its closing cash in excess of the amount of this claim, and it not having been shown that the cash balance of the bank between the time of the conversion of Mr. Ford's certificates and the closing of the bank was ever less than the amount of cash on hand at the time of the closing, the appellant is entitled to be listed as a lien claimant to the extent of this cash on hand. It was expressly so held in the like case of Farmers' Bank of White Plains v. Bailey, 221 Ky. 55, 297 S. W. 938, 940. There, as here, a special deposit of bonds had been made with the bank. It had converted the bonds and later went into the hands of the. banking commissioner as an insolvent bank. In holding that the bondholders whose bonds had been converted had a lien on the cash on hand at the time the bank closed to secure their claim for the converted bonds, we said:

"The next question for determination is whether the proceeds of the bonds may be traced into the assets of the bank. The old rule that money has no earmarks, and that the blending of trust money with the money of the trustee will defeat the owner's title and compel him to stand as a mere unsecured creditor, is no longer in force. The modern rule is that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor. Peters v. Bain, 133 U. S. 670, 10 S. Ct. 354, 33 L. Ed. 696. As a part of this doctrine it is also held that, where a bank has mingled trust money with its own funds, money paid out from such funds for its own purposes will be presumed to have been paid from its own money and not from the trust funds, where the mingled fund has not been reduced at any time below the amount of the trust fund. Smith v. Fuller, 86 Ohio St. 57, 99 N. E. 214, L. R. A. 1916C, 6, Ann. Cas. 1913D, 387. No question of priority between the bondholders is raised. The amount of cash on hand at periods prior to the closing of the bank is not shown. It does not appear that the cash balance was ever less than the balance on hand when the bank closed. As the proceeds of the bonds were traced into the cash of the bank, and the presumption is that the bank discharged its own obligations from its own funds, we are constrained to the view that the bondholders have a preferred claim on the cash on hand when the banking commissioner took charge."

The judgment is therefore reversed, with instructions to enter a judgment in conformity with this opinion.