### Baker et al. v. McIntosh et al.

April 30, 1943.

528

Jesse Morgan for appellants.

S. M. Ward, D. G. Boleyn and A. H. Patton for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Estill Sizemore, a resident of Perry County, died intestate in 1923, the month and day not being shown. A. C. McIntosh was appointed by the county court of Perry County as administrator of the estate of the deceased, and executed bond as such with Jesse Baker and M. C. Napier, as sureties thereon. There came into his hands as such fiduciary $8,712.26. He defaulted and failed to account for $3,000 of that fund. Decedent left surviving him his widow and a posthumous child, for whom the Hazard Bank and Trust Company was appointed guardian. While McIntosh was serving as administrator of deceased, Jesse Baker died testate and his widow was appointed executrix of his will, which was probated in the Perry county court. On July 22, 1926, the guardian of the posthumous heir of the deceased filed this action in the Perry circuit court against McIntosh, M. C. Napier and the executrix of Jesse Baker, the other surety of McIntosh, seeking to recover against defendants the amount of McIntosh's defalcations.

Later McIntosh was removed as administrator of the Sizemore estate and G. C. Wilson was appointed as his successor, and he later came into the case praying for the same relief as was done by plaintiff in the original petition.

At the inception of the action an attachment was obtained against McIntosh which was levied on a tract of land to which he held the legal title, but the consideration of which had not been paid. In due time, and with but little, if any, objection, the sheriff who levied the attachment was ordered and directed to sell the attached property, which he did, and one A. C. Turner became the purchaser at the price of $3,000, for which he executed bonds as directed in the order of sale. Upon the levying of the attachment a statutory lis pendens lien was filed in the Perry county court and recorded. After the sale Elihu Reynolds was brought into the case upon the ground that he claimed some interest in the attached land and he responded by filing a pleading in which he claimed to have purchased the attached land from McIntosh ten days before the attachment was served or the lis pendens notice given. He asked that the attachment be discharged and he be declared the owner of the land, or if it should be adjudged for any reason that he was not entitled to the whole of the attached land that he at least was entitled to $1,000 of its proceeds, since McIntosh was a bona fide housekeeper and entitled to homestead rights in the attached land which he occupied with his family at the time the attachment was levied, and which he (Reynolds) alleged was the situation before plaintiffs' cause of action accrued.

That pleading of Reynolds was—though informally —denied by plaintiff in his amended petition, filed after the assertion by Reynolds of his claim, and in that amendment it was averred that the alleged purchase by Reynolds was fraudulent, without consideration, collusive and void. In the meantime some proof had been taken and the cause was then submitted "for final opinion and judgment, as against A. C. McIntosh and Elihu Reynolds." That submission was followed by a judgment "as between the plaintiffs and the defendants, A. C. McIntosh and Elihu Reynolds," in which the court gave judgment in favor of the plaintiffs representing the Sizemore estate, against McIntosh for $3,000, and that the claim of Reynolds be dismissed, since his paper

title to the McIntosh land (a title bond), was not recorded at the time of the attachment, and that his alleged purchase of the McIntosh land was without consideration and that he obtained his deed therefor after the attachment and the filing of the lis pendens notice—to all of which Reynolds prayed an appeal to this court which he perfected as against only the Sizemore estate and the guardian of the Sizemore infant—the sureties of McIntosh on his administrator's bond not having been made appellees or in any wise parties to that appeal. That judgment was reversed insofar as it denied to Reynolds against the Sizemore estate $1,000, the value of the homestead rights of McIntosh, since the only testimony in the record at that stage of the proceedings showed that McIntosh was entitled to his homestead rights in the attached land, and that Reynolds became entitled thereto as purchaser from McIntosh who had the right—according to the proof then in the record—to claim homestead rights as against the Sizemore estate. That opinion is reported in 233 Ky. 122, 25 S. W. (2d) 48, under the style of Reynolds v. Sizemore.

Upon the filing of the mandate of this court in the Perry circuit court the judgment appealed from in the case referred to was set aside to the extent that it denied to Reynolds the $1,000 homestead right of McIntosh. More pleadings were filed by the parties then in the case, and other parties later came in asserting rights to the $1,000 which this court held Reynolds was entitled to under the condition of the record then brought to this court, and which, it will be observed, involved no rights or legal claims to which the sureties of McIntosh might be entitled; nor had any issues been raised in the cause touching their rights up to that time. They were, therefore, not bound by the judgment which we rendered in favor of Reynolds on that appeal.

After the case was returned to the Perry circuit court other claimants and creditors of Reynolds to the $1,000 benefit in favor of Reynolds, came into the cause and pleaded an assignment to them by him of his rights as security for past indebtedness of his to them. A special judge was appointed (the then regular judge declining to sit in the cause), and for some reason he adjudged that Reynolds was entitled to only one-half of his $1,000 claim, and that McIntosh was entitled to the other one-half; but at that time the Baker estate had

not asserted its right growing out of its relationship to the Sizemore estate as surety for McIntosh on his bond as administrator of that estate. The purchaser of the land above referred to was unable to meet the obligations of his sale bonds and he transferred his bid to the Baker estate, which latter paid the Sizemore estate $2,000 of the $3,000 judgment previously rendered against the Baker estate, and which was done in satisfaction of that judgment pursuant to an order of court rendered upon application of the parties herefor.

Among those asserting a claim against Reynolds for the $1,000 claimed by the latter, was the First National Bank of Jackson, Kentucky, to which Reynolds was indebted and had given a mortgage on land to secure its debt, and later received an assignment of Reynolds' claim as additional security. In the meantime Mrs. Baker, the executrix of the estate of her husband, died, never having asserted by any pleading any claim to the entire proceeds arising from the sale of the McIntosh land through the operation of any trust, or subrogation rights or otherwise. After the death of Mrs. Baker her children and heirs of her deceased husband came into the case and asserted the rights of the Baker estate to the $1,000 fund over which the battle had raged from the time we rendered our opinion in the 233 Ky. case. Their claim was based upon testimony that was taken since the rendition of our opinion supra, clearly and uncontradictingly showing that McIntosh had paid for the land that had been attached and sold with funds belonging to the Sizemore estate, and that it thereby became impressed with a trust in favor of that estate. Furthermore, that no action or non-action taken or omitted, in the progress of the litigation by the Sizemore estate could deprive the sureties of McIntosh from succeeding to such trust rights through the operation of the doctrine of subrogation. They alleged that it had already been adjudged, and it was a fact, that the purchase by Reynolds of the McIntosh land was without consideration, fraudulent, and void, and that the failure of the Sizemore estate to rely and insist upon that fact and to suffer and permit the establishment of Reynolds' claim to the $1,000 without protest was not binding upon the Baker estate as surety to the Sizemore estate. Therefore, none of the judgments rendered by the court throughout the progress of the cause could deprive the heirs of the Baker estate of their rights in the premises.

After the filing of that pleading by the Baker heirs, which was filed in order to conform to the proof taken, another special judge, Hon. W. W. Reeves, was agreed upon, to whom the cause was submitted, and he adjudged that the claim of the Baker heirs be dismissed and that (based upon the judgment of the first special judge ante) one-half of the contested fund of $1,000 belonged to the First National Bank of Jackson, assignee of Reynolds, and the other one-half to McIntosh, with a lien upon the attached land to secure those adjudged interests. The land was ordered to be sold to satisfy those claims. From that judgment the Baker heirs prosecute this appeal. However, a motion was made at the same term of court to set aside that judgment because the legal rights of the Baker heirs, as hereinbefore stated, had never been presented or adjudicated at any time throughout the cause, and that the First National Bank of Jackson was not a bona fide claimant, since it purchased the judgment—not for a simultaneous consideration—but to secure a past contracted indebtedness, and further that its debt—to secure which the transfer of the Reynolds claim was made—had been fully satisfied through enforcement proceedings for a sale of the land that had been mortgaged to it. Appellants further contended that so far as McIntosh was concerned he was not entitled to any homestead exemptions as against the Sizemore estate, or the sureties on his bond since the land was paid for with the trust fund belonging to that estate. The court overruled that motion, from which this appeal is likewise taken.

We have been as brief as possible in giving the history of this litigation throughout its long sojourn in the circuit court; but many motions and steps made and taken by the various litigants, who came into the case, have not been referred to because immaterial to the decision of the issues presented as between the parties to this appeal. We will not incumber the opinion with an array of authorities holding that trust funds invested by a fiduciary in property—the title to which was taken to the trustee individually—may be followed by the beneficial owner of the invested fund, when it can be so traced, and where the rights of interested parties are not involved, or if so their rights are not impaired.

The text in 26 R. C. L. page 1214, section 57, and page 1227, section 72, in treating of the general subject

"Trusts" states the fundamental principle of the law as we have above outlined it. In the first citation it is said: "When a person becomes invested with the title to real property under circumstances which, in equity, obligate him to hold the title and to exercise his ownership for the benefit of another, a trust arises in favor of such other person commensurate with his interest in the subject matter." Approaching more concretely the doctrine as here presented, the latter reference says: "If a person holds the funds of another in consequence of some fiduciary relation between them, e. g., guardian, executor, etc., he will hold any property purchased with those funds on the same trust."

Many cases cited in the notes to the text referred to adopt, approve and enforce that principle of the law, and cases from this court to the same effect will be found cited in vol. 18 of West's Kentucky Digest, under the heading of Trusts, key 349. However, the trial court rejected that right in rendering the judgment appealed from upon the grounds (1) that the trust fund "lost its identity," (2) that rights of innocent third parties intervened, and (3) that the Bakers were guilty of laches in asserting the rights of that estate to follow the trust funds. We think the court was in error in all of those assigned reasons. It was clearly shown that the McIntosh land was paid for by funds belonging to the Sizemore estate. The alleged innocent parties had been adjudged not to be such, and the proof showed that the First National Bank of Jackson had received satisfaction of its claim against Reynolds and also that it was not an innocent purchaser, since it paid nothing for the transfer of Reynolds' judgment to it as security for prior indebtedness at the time the transfer was made. The alleged laches of the Baker heirs was likewise unavailable, since no sustainable rights of innocent parties intervened, since they promptly proceeded to assert their claim after development of their case by the taking of testimony, immediately following which their claims were asserted. The taking of proof covered a long period, and the claim was promptly asserted after it was furnished.

The court furthermore based its judgment upon the ground that the judgment, supra—rendered by the special judge following our opinion in the 233 Kentucky case, wherein Reynolds and McIntosh were held to be en-

titled to the $1,000 fund in controversy—was res adjudica as to the Baker heirs, when the fact was that the Baker estate was not before this court when that opinion was rendered, and a part of the judgment appealed from on that hearing also adjudged that Reynolds' claim was without foundation, and that part of the judgment was not passed on by us, but remained in force so far as the Baker estate was concerned. It is entirely unnecessary to cite authorities in support of the proposition that no one is bound by a judgment without being a party thereto. In this case, as we have seen, the issue under review in the 233 Kentucky case was exclusively between Reynolds and the Sizemore estate, and it was the only one determined by us on that appeal. No question of the fraudulent nature of the Reynolds' claim, nor that it was without supporting consideration, was presented, discussed or determined on that appeal. Nor was any right appertaining to the Baker estate disposed of by the judgment of the first special judge who sat in the case after filing the mandate from this court in the Perry circuit court. Therefore, no issue was presented or determined in that judgment that would estop the Baker estate from afterwards asserting the rights they now contend for.

The Sizemore estate having the right to follow its funds into the land purchased by McIntosh, the surety (Baker estate) on the bond of the administrator of that estate possessed—under the right of subrogation—the same right to follow the trust funds as was possessed by the obligee in that bond, and of which the latter, as we have said, could not deprive it. Therefore, when it became admitted, and uncontradictedly proven, that the trust funds in the hands of McIntosh paid for his land that was attached and sold a trust arose in behalf of the Sizemore estate to subject the lands to any indebtedness of the fiduciary to it, and the Baker estate, as surety, possessed the right through the doctrine of subrogation to also trace such funds, if a defalcation of the principal should occur to the extent that the surety was compelled to pay. Therefore, it inevitably follows that the court erred in dismissing the claim of the Baker estate and in adjudging as against it that the fund in contest belonged to appellees.

Wherefore, the judgment is reversed, with directions to cancel the remaining unpaid purchase bonds assumed by the Baker estate under the transfer by Turner

of his bid, and for other proceedings consistent with this opinion.

The whole Court sitting.