COMMONWEALTH of Kentucky CABINET FOR HUMAN RESOURCES, DIVISION OF UNEMPLOYMENT INSURANCE, Appellant,

v.

SECURITY OF AMERICA LIFE INSURANCE COMPANY; Commonwealth of Kentucky, Revenue Cabinet; United States of America, Internal Revenue Service; James D. Howard; Beecher Frazier; Century Auto Sales, Inc.; and Classic Chevrolet–Pontiac, Inc., Appellees.

REVENUE CABINET, COMMONWEALTH OF KENTUCKY, Appellant,

v.

CENTURY AUTO SALES, INC., Classic Chevrolet–Pontiac, Inc., et al., Appellees.

Nos. 91–CA–0067–MR, 91–CA–0068–MR.

Court of Appeals of Kentucky.

May 22, 1992.

Ryan M. Halloran, Randall K. Justice, Cabinet for Human Resources, Arnold C. Jones, Donald S. Guier, Revenue Cabinet, Frankfort, for appellants.

John I. Hanbury, Van Antwerp, Monge, Jones & Edwards, Ashland, Karen Caldwell, David E. Middleton, U.S. Atty., Lexington, William H. Jackson, Louisa, Eugene C. Rice, L. Owen Doyle, Paintsville, for appellees.

Before JOHNSON, MILLER and WILHOIT, Judges.

JOHNSON, Judge.

This is a consolidated appeal from the Lawrence Circuit Court. We find that the trial court misapplied the case of *Farmers Bank of White Plains v. Bailey*, 221 Ky., 55, 297 S.W. 938 (1927), whereby its decision was clearly erroneous as a matter of law. Accordingly, we reverse, and remand for proof consistent with this opinion.

Appellee, Classic Chevrolet–Pontiac, Inc., (hereinafter "Classic") sold automobiles in Louisa, Lawrence County, Kentucky. Classic entered in an agreement to sell its assets to appellee, Century Auto Sales, Inc., (hereinafter "Century") for $100,000. The assets Classic agreed to sell Century were parts inventory, office supply inventory, furniture and fixtures, tools, service and other equipment, parts truck, wrecker, maintenance vehicle and office trailers. The sale constituted a "Bulk Sale" under Article VI of the Kentucky Uniform Commercial Code. The proposed distribution of the sale proceeds was not satisfactory to some of the creditors, and a declaratory judgment action was filed asking the Lawrence Circuit Court to determine priorities of distribution of the assets to the various creditors.

The Complaint alleged, and the parties admitted, that the Internal Revenue Service (hereinafter "IRS") filed two liens against Classic on March 26, 1987, and August 13, 1988. At the beginning of the lawsuit, the IRS levied on the escrowed funds, was made whole, and filed a disclaimer on April 21, 1989. The IRS claim was for $77,306.45.

The Commonwealth of Kentucky, Cabinet for Human Resources, Division of Unemployment Insurance (hereinafter the "Division") filed two liens on August 26, 1988, and October 28, 1988, for the nonpayment of unemployment insurance contributions due pursuant to KRS Chapter 341 for the first, second and third quarters of 1988 totalling $10,647.18 with additional interest of $139.56 per month beginning April 1, 1989.

The Commonwealth of Kentucky, Revenue Cabinet (hereinafter "Revenue Cabinet") filed one lien on December 9, 1988, for various unpaid taxes, such as, withholding taxes, corporate income taxes, motor vehicle rental usage taxes, lien fee taxes, and administrative costs taxes for $45,-850.75, plus additional interest at the rate of 10% per annum, plus a 25% judgment penalty.

Security of America Life Insurance Company (hereinafter "Security") also claimed an interest in the sale proceeds. Classic entered into two agreements with Security to sell certain insurance to customers who had purchased automobiles from Classic. The agreements required Classic to collect the premiums. Classic was to retain sixty percent (60%) of the premiums and remit forty percent (40%) to Security. The Lawrence Circuit Court found, and we agree, that pursuant to KRS 304.9–130, James D. Howard was qualified as an individual licensee to purchase the policies for and on behalf of Classic.

Classic failed to remit premium proceeds to Security in the amount of $38,379.67. Security has alleged that the general assets of Classic are subject to a constructive trust in its favor for the unpaid premiums. No evidence was presented to trace the unremitted premiums.

The case was presented to the trial court on cross-motions for summary judgment. The trial court entered an Order and Judgment on September 7, 1990, and an Order and Amended Judgment on December 12, 1990. The trial court held that Security, the IRS and the Revenue Cabinet were *not* required to trace the unremitted payments to the assets subject to the bulk sales before a constructive trust could be imposed; and that the tax liens never attached to the assets of Classic to the extent that a constructive trust is imposed since the unremitted premiums were never the property of Classic. Appeals by the IRS, the Revenue Cabinet and the Division followed. The IRS failed to perfect its appeal, and it was dismissed. The appeals of the Revenue Cabinet and the Division were consolidated, and the IRS is a party to both appeals as an appellee, but has not filed a cross-appeal.

We find that the trial court erred when it failed to require tracing of the proceeds of the constructive trusts into the assets of Classic. We further find that the trial court erred when it held that the tax liens did not have priority over the constructive trust on the grounds that the proceeds in the constructive trust was not property in the possession of Classic and subject to the liens. We further find that the parties are in agreement that on remand the claim of the IRS should be considered a valid claim and this Opinion shall have the same application to the IRS as it does the other parties even though the IRS appeal was dismissed.

It is clear from reading the Order and Amended Judgment that the trial court's decision was based on a finding that "the requirement that the misappropriated funds be traced into a specific asset is no longer applicable" citing *Farmers Bank of White Plains v. Bailey, supra*. The trial court erred as a matter of law in its application of *Bailey;* and therefore, we must reverse and remand the case for the trial court to take proof as to the tracing of all misappropriated funds for which a constructive trust is imposed. We accept much of the argument made by Appellant Division.

In *Bailey* the bank had deposited with it for safekeeping bonds for which the bank issued certificates acknowledging receipt of the bonds and stating that upon surrender of the certificates that the bonds would be returned to the depositor. The bank, without authorization, sold the bonds for $19,500 and placed the proceeds into an "emergency fund." The proceeds were commingled with the funds of the bank. The bank became insolvent and unable to honor the certificates for the bonds. At the time of the insolvency, the balance of the "emergency fund" was $17,003.28. The bank closed its door with $3,037.04 in cash in its vaults and owned bonds worth $4,094.85. The court made a determination as to whether the owners of the bonds deposited with the bank were entitled to a constructive trust in either the cash in the bank's vault or the bonds the bank owned. As to the cash, the court stated:

> The old rule that money has no earmarks, and that the blending of trust money with the money of the trustee will defeat the owner's title and compel him to stand as a mere unsecured creditor, is no longer in force. The modern rule is that confusion does not destroy the equi-

ty entirely, but converts it into a charge upon the entire mass giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor.

*Id.* at 940.

However, the court then decided whether the owners of the bonds deposited with the bank were entitled to a constructive trust in the bonds the bank owned. The court stated:

With respect to the bonds of the market value of $4,094.85, a different question is presented. It does not appear when these bonds were bought or how they were paid for. It is not shown that any of the trust funds were used in their purchase. There is no presumption that they were purchased with the trust funds. On the contrary, the presumption is that the bank used its own funds in making the purchase. It follows that the bondholders failed to trace any of the proceeds of their bonds into the bonds owned by the bank, and, that being true, they are not entitled to a prior claim thereon.

*Id.* at 940.

The court further held as to any other assets of the bank, that whether the owners of the bonds deposited with the bank have a preferred claim on those assets "will depend on whether or not the proceeds of the bonds may be traced into such assets...." *Id.* at 940.

Subsequently, *Bailey* returned to the appellate court on a second appeal. *Bailey v. Farmers' Bank of White Plains*, 227 Ky. 179, 12 S.W.2d 312 (1928). In its second decision the court made it clear that the owners of the bonds deposited with the bank had only a general unsecured claim against the remaining assets of the bank.

In the case before us it appears that the trial court may have misinterpreted *Bailey's* reference to the term "entire mass." The "entire mass" referred to in *Bailey* was the "entire mass" of cash, not the "entire mass" of general assets. In other words, one claiming through a constructive trust is not required to do the impossible and show that a particular piece of legal

tender was once their own since "confusion does not destroy the equity entirely." However, the *Bailey* court did not go as far as the trial court indicated. The court in the first *Bailey* case stated:

It is suggested that, besides the cash on hand; there are other assets in the hands of the commissioner of banking, and we are asked to say whether or not the bondholders have a preferred claim on these assets. That will depend on whether or not the proceeds of the bonds may be traced into such assets, and, the case in that respect not having been developed, we express no opinion on the subject.

*Id.* at 940.

*Bailey* has been cited for this tracing requirement in *Sargent v. Whitfield & Company*, 226 Ky. 754, 761, 11 S.W.2d 926, 929 (1928), and *Ford's Adm'x v. Bank of Hartford*, 250 Ky. 793, 799, 63 S.W.2d 967, 969 (1933). *See also Glass v. Gutman*, Ky. 268 S.W.2d 410 (1954); *Baker v. McIntosh*, 294 Ky. 527, 172 S.W.2d 29 (1943).

*Bailey*, as Appellant Division points out, is supported by the general law of constructive trusts. It is basic that

a trust will follow property through all changes in its state and form, so long as such property, its product, or its proceeds are capable of identification.

76 Am.Jur.2d, *Trusts* Section 251.

It is necessary to identify trust property or funds or the product or proceeds thereof in order to follow and enforce the trust against the same; otherwise the beneficiary has only a right to claim damages or the right of a general creditor.

76 Am.Jur.2d, *Trusts* Section 252.

Merely tracing trust property or funds into the general estate of a trustee ... is not sufficient identification of the trust property or funds, within the trust pursuit rule, to preserve the trust res; in such a case the beneficiary stands merely as a general creditor of the trustee or the transferee.

76 Am.Jur.2d, *Trusts* Section 262.

Further, as is pointed out by Appellee IRS, the Restatement on Restitution and

the Second Restatement on Trusts both state without equivocation that tracing is required.

Section 215. Necessity of Tracing Property

(1) Except as stated in Subsection (2), where a person wrongfully disposes of the property of another but the property cannot be traced into any product, the other has merely a personal claim against the wrongdoer and cannot enforce a constructive trust or lien upon any part of the wrongdoer's property.

Restatement on Restitution Section 215, page 866.

Section 202. Following Trust Property into Its Product

(1) Where the trustee by the wrongful disposition of trust property acquires other property, the beneficiary is entitled at his option either to enforce a constructive trust of the property so acquired or to enforce an equitable lien upon it to secure his claim against the trustee for damages for breach of trust, as long as the product of the trust property is held by the trustee and can be traced.

(2) Except as stated in Subsection (1), the claim of the beneficiary against the trustee for breach of trust is that of a general creditor.

Second Restatement on Trusts Section 202, page 444.

Comment on Subsection (2).

o. *Necessity of tracing trust property.* The claim of the beneficiary against the trustee for breach of trust does not of itself entitle him to priority over the general creditors of the trustee. Thus, if the trustee sells trust property and dissipates the proceeds, the beneficiary is not entitled to priority over other creditors of the trustee. The beneficiary is entitled to priority only if and to the extent that he can trace the trust property into a product. He must prove not only that the trustee once had the trust property or its product, but that he still holds the trust property, or property which is in whole or in part the product of the trust property. As has been stated, the mere fact that the trust property or its proceeds has been mingled with the trustee's individual property in one indistinguishable mass does not prevent the beneficiary from following the trust property and obtaining in part at least priority over the trustee's general creditors. But if it is shown that the property or its proceeds has been dissipated so that no product remains, or if the beneficiary fails to prove that the trustee still has property into which the trust property is traceable, his claim is only that of a general creditor of the trustee.

If the trustee is also a beneficiary of the trust, the other beneficiaries are entitled to a charge upon the trustee's beneficial interest to secure their claims against the trustee for breach of trust. See Section 257.

Note O., Comment on Subsection (2) of Section 202 of Second Restatement on Trusts, page 454.

On remand, the trial court should take proof to determine to what extent, if any, any of the misappropriated funds due Security, the Revenue Cabinet, the Division, and the IRS can be traced into the assets of Classic. To the extent the funds can be traced into the assets of Classic, a constructive trust will exist for the respective creditor, and the creditor will be entitled to claim against said assets in the priority provided by law.

■ As to the priority issue, appellants argue that the trial court erred when it stated:

As to the priority issue, the question is not whether the trust "relates back" to a point in time prior to the tax liens. The question is whether the liens of the taxing authorities ever attached to the property protected by the constructive trust.... The trust prevents the misappropriated property from becoming the property of the wrongdoer. Since the unremitted premiums were never the property of Classic Chevrolet, the tax liens never attached to the assets of Classic Chevrolet to the extent that constructive trust is imposed.

We agree that the trial court was in error because the constructive trust being a crea-

ture of equity did not come into existence until it was created by court order. As the court stated in *Borg–Warner Acceptance v. First National Bank*, Ky.App., 577 S.W.2d 29 (1979):

> The question of actual knowledge is, however, immaterial in light of our determination that the creation of the equitable mortgage, correctly created by the trial court, does not relate back to the date of the attempted legal mortgage.
>
> The creation of an equitable mortgage between the parties to the attempted legal mortgage because of value given and received was an appropriate device for the prevention of manifest injustice as between those parties. There is, however, no sound reason for allowing such an equitable conveyance to prejudice the rights of strangers to the attempted mortgage.
>
> The conclusion that the bank had no security interest in the land until such interest was decreed by the Floyd Circuit Court calls for some modification of that court's assertion that the equitable mortgage has the same effect as an unrecorded mortgage. It may indeed have such an effect, but only from such time as it has come into existence.

*Id.* at 33.

Accordingly, on remand the trial court should allow the taxing authorities' liens the full force and effect that they are entitled to as provided by statute in light of the constructive trust coming into existence on September 4, 1990, the date of the trial court's Order and Judgment, and not relating back to any previous time.

■ The final issue concerns whether the IRS can benefit from the decision of this Court when its appeal has been dismissed. This might otherwise have been a difficult question; however, all the parties at oral argument were in agreement that in the interest of justice and for the most practical and logical approach to this case on remand that all relief from this decision must apply to all parties including the IRS.

At 4 C.J.S. Appeal & Error p. 1332, it is stated:

> Where there has been a joint judgment ... against several, the effect of an appeal ... by one or more, when it is permitted, without the concurrence of their coparties, is to carry up the whole case, and a reversal will inure to the benefit of all.

There are also precedents, under limited circumstances, in this Commonwealth for allowing the IRS to benefit from the appeal. In *Joyce v. Zachary*, 434 S.W.2d 659, 663 (1968), this state's highest court allowed a non-party to benefit from the appeal because for the court to sustain the original judgment "would result in the appellants' (sic) being overpaid and in this equitable proceeding the achievement of equity is the goal." In *Holsclaw v. Stephens*, Ky., 507 S.W.2d 462, 480 (1973), the state's highest court again allowed a non-party to benefit from the appeal wherein it stated:

> It is the opinion of a majority of the members of this court that in the unusual circumstances of this case where the ultimate responsibility for the payment of the fee will devolve upon the urban county government, a body which could not appeal as it was not then in existence, the failure of the county to appeal should not prevent review since the matter of the allowance is properly before us in the appeal of other parties.

We share the concerns of the appellate court in *Kicklighter v. Jannee, Inc.*, 616 F.2d 734 (5th Cir.1980), (wherein the defendant who did not appeal benefited from the relief obtained by the third-party defendant who appealed), wherein the court stated:

> It might be argued that our decision will encourage sloppiness. Defendant was an aggrieved party and could have appealed.... Defendant should have appealed. However, we believe that the limited scope of our decision will not lull defendants into inattentive failures to appeal.... We reemphasize the narrowness of our holding....

*Id.* at 744, footnote 16.

Accordingly, the trial court is reversed and the matter is remanded to the trial

court for action consistent with this Opinion.

All concur.