**In re Bobby Gene JONES, Debtor.**

**Kyle A. COOPER, Trustee, Plaintiff,**

**v.**

**FIRST CITIZENS BANK, HARDIN COUNTY, C.D. Lucas, Jr., Administrator for the Estate of Charlie D. Lucas, Defendants.**

**Bankruptcy No. 94–33662(2)7.**
**Adv. No. 95–3020.**

United States Bankruptcy Court,
W.D. Kentucky.

July 24, 1995.

Joan Cooper, Wyatt Tarrant & Combs, Louisville, KY, for plaintiff Oxbow Carbon & Minerals.

James E. Morreau, Jr., Louisville, KY, for trustee.

Thomas Murphy, Lester Adams, Louisville, KY, for defendants.

Kyle Cooper, Louisville, KY, for Perkin Elmer Corp. and Plumbers Supply Co.

### MEMORANDUM–OPINION

J. WENDELL ROBERTS, Chief Judge.

This matter is before this Court on the motion of Defendant, First Citizens Bank, Hardin County ("First Citizens"), to dismiss the Complaint filed against it by Kyle A. Cooper, Trustee for the Debtor's estate ("Trustee"). Trustee seeks by this adversary proceeding to have the mortgage held by First Citizens declared void on the theory it was improperly perfected. Having reviewed the briefs filed by all the parties, this Court finds that First Citizens did properly perfect its mortgage interest. Accordingly, this Court sustains First Citizens' Motion to Dismiss.

## FACTS

Bobby Gene Jones ("Debtor") filed for protection under Chapter 7 of the Bankruptcy Code on December 8, 1994. Trustee moved on January 27, 1995 to assume various executory contracts, including the Contract for Deed involved in this case. On February 23, 1995, Trustee brought this adversary proceeding seeking to avoid First Citizens' second mortgage on the real property located at 318 North Mulberry Street in Elizabethtown, Hardin County, Kentucky.

The property at issue was originally owned by C.D. Lucas, Sr. and his wife, Lois. On February 1, 1985, the Lucases entered into a Contract for Deed to sell the property to the Debtor. The parties agreed upon a price of $43,000.00, with a $1000 down-payment. The Contract for Deed provided for monthly interest payments of $385.00, beginning on February 1, 1985 through January 1, 1993, at the rate of 11% per annum. The remaining balance was due and payable upon the expiration of the contract, on February 1, 1993. The payment terms under the contract were thereafter extended on two separate occasions to February 1, 1994 and February 1, 1995, respectively. The monthly payments of $385.00 constituted payments of interest, only. Nevertheless, Debtor was entitled to make greater payments than those required by the contract and had a right of prepayment without penalty. The Contract for Deed further provided that Debtor would take possession of the property, as well as pay taxes and maintain insurance on the property beginning February 1, 1985.

C.D. Lucas, Sr. died in June 1985, several months after the Contract for Deed was executed. Thereafter, on October 23, 1985, Lucas's wife, Lois, quit-claimed her interest in the property to her deceased husband's estate. The Lucases' son, C.D. Lucas, Jr., subsequently purchased the interest of the remaining heirs of his father's estate in the property, on December 29, 1986.

On March 20, 1991, Debtor mortgaged his equity interest in the property to First Citizens. This mortgage serves as a second lien on the property at 318 North Mulberry Street, the first lien being the vendor's lien in favor of C.D. Lucas, Jr. First Citizens properly recorded its mortgage in Mortgage Book 600, at Page 137, in the Hardin County Clerk's Office, on March 26, 1991.

Debtor currently owes First Citizens $19,936.53 plus post-petition interest, costs and attorney fees, which is secured by the mortgage. The mortgage is in the face amount of $13,087.68, but contains a future advance clause for an additional $13,738.00.

With regard to the Contract for Deed, Debtor made all of the monthly interest payments of $385.00 from the time the Contract for Deed was executed through November, 1994. However, Debtor made no additional principal payments. Accordingly, the remaining balance on the Contract for Deed is the principal balance of $42,000.00, being the sale price minus the down-payment.

During the fall of 1994, Debtor located a buyer for the property, intending to pay over to C.D. Lucas, Jr. the proceeds from the sale in satisfaction of his (Debtor's) obligation under the Contract for Deed. The closing on this sale was to take place on December 9, 1994, one day after the filing of Debtor's bankruptcy case. Debtor requested C.D. Lucas, Jr. to attend the closing and bring (1) a deed from C.D. Lucas, Sr. to C.D. Lucas, Jr., and (2) a deed from C.D. Lucas, Jr. to Debtor. Attorney Pamela Addington was to conduct the closing. Upon the request of Attorney Addington, Lucas, Jr. left the two deeds with Ms. Addington, with the understanding that Ms. Addington would handle the closing, obtain the sales proceeds and cause $42,000.00 to be remitted to Lucas, Jr.

The closing never took place, however, due to the fact that the purchaser of the property refused to participate in the closing. Nevertheless, Ms. Addington caused the two deeds to be recorded. The recording of these deeds did not occur until after the filing of Debtor's bankruptcy petition.

## LEGAL DISCUSSION

### A. SUMMARY JUDGMENT.

In considering a motion for summary judgment, the question presented to this Court is whether there is "no genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). This Court cannot try issues of fact on a Rule 56 motion, but is authorized to determine whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court held that "in filing a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden; i.e., whether a jury could reasonably find either the plaintiff proved his case by the quality or quantity of evidence required by the law or that he did not." *Id.*, 477 U.S. at 254, 106 S.Ct. at 2513.

When ruling on a motion for summary judgment, the inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion, in this case the Trustee. *Anderson*, 477 U.S. at 242, 106 S.Ct. at 2505. By granting summary judgment, the Court is concluding that based on the evidence upon which the nonmoving party intends to rely at trial, no reasonable fact finder could return a verdict for the nonmoving party. *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985).

The moving party carries the initial burden of proof by informing the Court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. Once the moving party has produced such evidence, the non-moving party must then direct the Court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. In other words, the nonmoving party, in this case the Trustee, must come forward with evidence establishing that it has a viable cause of action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *First National Bank v. Cities Service Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968).

In the present case, it does not appear that there are any material facts in dispute with regard to the claim asserted by Trustee against First Citizens. Trustee takes the position that the Contract for Deed is an executory contract. Accordingly, he wishes to assume the Contract for Deed and has filed this adversary proceeding to avoid First Citizens' mortgage on the theory that it was not properly perfected. While this Court agrees that the Contract for Deed is an executory contract which Trustee may assume or reject, if Trustee chooses to assume the Contract for Deed, he must accept both the rights as well as the obligations of Debtor pursuant thereto. *In re Meadows*, 39 B.R. 538, 540 (Bankr.W.D.Ky.1984). Consequently, Trustee must assume it subject to First Citizens' mortgage, which this Court finds was properly perfected for the reasons set forth below. Accordingly, this Court finds that First Citizens is entitled to judgment as a matter of law.

**B. THE CONTRACT FOR DEED IS AN EXECUTORY CONTRACT WHICH TRUSTEE MAY ASSUME OR REJECT PURSUANT TO 11 U.S.C. § 365.**

 Trustee is required by Section 365 of the Bankruptcy Code to assume an executory contract in order for the rights thereunder to become an asset of Debtor's Chapter 7 estate. The Bankruptcy Code does not expressly define the term "executory contract." However, it is clear from the legislative history of § 365 that Congress intended the term to be defined as a contract "on which performance remains due to some extent on both sides." *In re Terrell*, 892 F.2d 469, 471 (6th Cir.1989); *Meadows*, 39 B.R. at 540; *In re Willingham*, 139 B.R. 670, 672 (Bankr. N.D.Ohio1991). The Sixth Circuit has held that Contracts for Deed are generally executory contracts. *Terrell*, 892 F.2d at 472–73; *accord Meadows*, 39 B.R. at 540. Contracts for Deed impose future obligations on both parties. The Debtor/purchaser is obligated to make installment payments in accordance with the payment schedule set forth in the Contract for Deed. *Terrell*, 892 F.2d at 472; *Meadows*, 39 B.R. at 540. The Seller, on the other hand, must deliver legal title to the property upon completion of Debtor's payments. *Terrell*, 892 F.2d at 472; *Meadows*, 39 B.R. at 540; *Willingham*, 139 B.R. at 672. Under the laws of nearly every state, including Kentucky, failure of either party to perform his obligations constitutes a material

breach. *Terrell*, 892 F.2d at 471–72. *See Gamble v. Bryant*, Ky.App. 599 S.W.2d 472, 473–74 (1980).

Under the facts of this case, Debtor has paid only $1,000.00 in principal under the Contract for Deed. Due to the fact that the rights and interests of the parties are to be determined as of the date and time the bankruptcy petition was filed, this Court shall not consider the post-petition conveyance of the deed to the subject property, as such conveyance occurred without Court approval. Thus, this Court finds that the Seller, C.D. Lucas, Jr., continued to hold the legal title to the property at the time of the filing of Debtor's bankruptcy petition, and was not required to convey that title until completion of Debtor's performance under the Contract for Deed. Consequently, the Contract for Deed is an executory contract which may be assumed or rejected.

■ Accordingly, if Trustee is able to fulfill the requirements of § 365, he may assume the Contract for Deed. Nevertheless, Trustee must assume it subject to both the rights as well as the obligations of Debtor under the Contract for Deed. *Meadows*, 39 B.R. at 540.

### C. *DEBTOR GRANTED FIRST CITIZENS A VALID LIEN ON REAL ESTATE.*

■ Trustee argues that First Citizens' mortgage interest was not an interest in real estate. Instead, Trustee characterizes First Citizens' interest as being purely an interest in a contract. In fact, Trustee filed a Sur–Reply Brief which goes so far as to claim that Debtor's Contract for Deed was not in actuality a Contract for Deed at all. Rather, it was a lease with an Option to Purchase.

■ This Court notes that neither the Federal Rules of Bankruptcy nor the local rules allow for the filing of Sur–Reply Briefs. Trustee filed his Sur–Reply Brief without leave of Court; thus, Trustee is not entitled to have this Court consider this argument. Nevertheless, this Court has read Trustee's Sur–Reply and upon reviewing the document in question, as well as the conduct of the parties, finds that the parties intended to enter into a Contract for Deed. The document was entitled "Contract for Deed" and evidences the clear intention of the parties to consummate a *sale* of the real estate. Moreover, C.D. Lucas's post-petition conduct of conveying legal title to Debtor upon the mistaken belief that Debtor was in the process of obtaining the necessary funds to complete his obligations under the Contract for Deed supports this conclusion.

■ Under Kentucky law, a Contract for Deed works an equitable conversion of the title. The Kentucky Supreme Court has held that "there is no practical distinction between the land sale contract and a purchase money mortgage, in which the seller conveys legal title to the buyer but retains a lien on the property to secure payment." *Sebastian v. Floyd*, Ky., 585 S.W.2d 381, 383 (1979). The Kentucky Supreme Court explained:

> The significant feature of each device is the seller's financing the buyer's purchase of the property, using the property as collateral for the loan.

*Id.* Thus, under a Contract for Deed, the purchaser obtains equitable title to the property, while only bare legal title remains in the seller. *Id.; See also Gamble*, 599 S.W.2d at 474.

■ The *Sebastian* Court held that a Contract for Deed in effect creates a "vendor's lien," which is analogous to a mortgage, in the property to secure the unpaid balance owed under the contract. *Sebastian*, 585 S.W.2d at 383; *See also Gamble*, 599 S.W.2d at 474. The Kentucky Supreme Court supports this proposition by declaring that under Kentucky law, the buyer no longer forfeits his entire interest in the property upon default. *Sebastian*, 585 S.W.2d at 383.

■ In the case at bar, Debtor became the equitable owner of the property when he obtained the Contract for Deed from the Lucases (C.D. Lucas, Sr. and his wife, Lois). Debtor then pledged his equitable interest in the property under the Contract for Deed as collateral to First Citizens. Any interest capable of passing by purchase or descent is capable of being encumbered by mortgage. *Bennett v. Harrison*, 115 Minn.

342, 132 N.W. 309 (1911); *See Willingham,* 139 B.R. at 670; 55 Am.Jur.2d *Mortgages* Section 106 and 111. In order to grant a valid mortgage in property one must have present valid title, whether legal or equitable, or some other recognized property interest in the property sought to be mortgaged. *Mead v. Pinyard,* 154 U.S. 620, 14 S.Ct. 1205, 23 L.Ed. 501 (1894); *See also Matter of Dukes,* 24 B.R. 404, 409 (Bankr.E.D.Mich. 1982). Thus, a purchaser of real property may properly grant a security interest in his or her equitable interest in property held subject to the rights of a land contract vendor. *Willingham,* 139 B.R. at 672. Accordingly, Debtor's equitable interest in the property was transferable, and was, therefore, a mortgageable interest. Thus, Debtor had a right to pledge his equitable interest in the Mulberry Street property as collateral for his loan from First Citizens.

## D. FIRST CITIZENS PROPERLY PERFECTED ITS MORTGAGE.

■ Trustee contends that First Citizens did not properly perfect its mortgage. He erroneously asserts that First Citizens' interest is a general intangible and, thus, should have been recorded with the chattel mortgages in accordance with Article 9 of the Uniform Commercial Code. Article 9 governs secured transactions. However, Debtor's transaction with First Citizens involved the granting of an interest in *real* property, which is specifically exempted from the scope of Article 9 by KRS 355.9–104(10).

■ Chapter 382 of the Kentucky Revised Statutes governs conveyances and encumbrances of real estate. Many of the provisions of that Chapter are applicable to the transaction at issue. Specifically, KRS 382.200 requires a county clerk to keep a cross reference of all real property conveyances, including mortgages, deeds of trust, leases or *contracts.* Further, KRS 382.270 reads:

> Instruments not valid against purchasers or creditors unless recorded.—No deed or deed of trust or mortgage conveying a legal or *equitable title to real property* shall be valid against a purchaser for a valuable consideration, without notice

thereof, or against creditors, until such deed or mortgage is acknowledged or proved according to law and lodged for record. As used in this section *"creditors" includes all creditors irrespective of whether or not they have acquired a lien by legal or equitable proceedings* or by voluntary conveyance. (496: amend. Acts 1962, ch. 83 § 16) (emphasis added).

Thus, it is clear that the state legislature contemplated the conveyance of *equitable title* to real property when enacting this statute. First Citizens filed notice of its lien in the county clerk's office in order to give notice to the public of its interest in real property.

■ Trustee also argues that because Debtor made no payments on principal, First Citizens' lien may be avoided. This Court finds Trustee's argument to be flawed. Upon default in payment to Lucas, Jr., a foreclosure action could have been brought. The equity cushion, if any, belongs to Debtor's estate; not Lucas. *See Sebastian,* 585 S.W.2d at 383. However, the mortgage of First Citizens, as second lienholder, would also be required to be paid before Debtor or the estate would be entitled to any proceeds. Thus, whether or not Trustee assumes the Contract for Deed the results for First Citizen are the same. It has a valid and properly perfected lien interest in the subject real property.

## E. TRUSTEE DOES NOT HOLD LEGAL TITLE TO THE PROPERTY IN CONSTRUCTIVE TRUST FOR LUCAS, JR.

■ Lucas, Jr. has filed a brief requesting this Court to enter an Order finding that "Trustee, as representative of the Debtor's estate, holds title to the property in constructive trust for Lucas inasmuch as Lucas was persuaded to convey his interest in the property to Debtor by the Debtor's agent, Attorney Addington, in reliance upon the representations by Attorney Addington that Lucas would be paid the amount of monies owed under the Contract for Deed in return for his release of the Deeds" (Response. of C.D. Lucas, at 3–4).

This Court must deny Lucas, Jr.'s request, as Trustee does not hold legal title to the

property. Legal title to the property was transferred to Debtor *after* the date this bankruptcy action was filed. Therefore, it is not property of Debtor's bankruptcy estate. 11 U.S.C. § 541(a)(1). Section 541(a)(1) of the Bankruptcy Code provides that the bankruptcy estate is comprised of "all legal and equitable interests of the debtor in property *as of the commencement of the case.*" (emphasis added).

 Moreover, Lucas, Jr. erroneously argues that a constructive trust arose at the time of the conveyance of the deed from Lucas, Jr. to Attorney Addington. The Sixth Circuit has held that constructive trusts come into existence only when they are created by Court order. *In re Omegas, Inc.,* 16 F.3d 1443, 1449 (6th Cir.1994). The Sixth Circuit explained that a constructive trust is "not really a trust," but rather is an equitable remedy that exists "by the grace of judicial action." *Id.; Commonwealth of Kentucky, Cabinet of Human Resources v. Security of America Life Ins. Co.,* Ky.App., 834 S.W.2d 176, 180–81 (1992). An equitable interest arises when the Court declares so, and not before. *Omegas,* 16 F.3d at 1449; *Security of America,* 834 S.W.2d at 180–81; *See also Borg-Warner Acceptance v. First Nat'l Bank,* Ky.app., 577 S.W.2d 29 (1979).

 The *Omegas* case mandates that the focus upon the parties' rights and the ultimate distribution of assets be based upon the date of the commencement of the case; i.e., the date the bankruptcy petition was filed. *Omegas, Inc.* 16 F.3d at 1449. If the constructive trust has not been already impressed as a pre-petition remedy, it is nothing more than a "claim." *Id.* Thus, Lucas, Jr. simply has a claim against Debtor, which arose subsequent to this bankruptcy action. Lucas, Jr. may, accordingly, pursue that claim in State Court.

### *CONCLUSION*

For the above stated reasons, this Court by separate Order sustains Defendant, First Citizens Bank's, Motion to Dismiss.